AMSAV GROUP, INC. and Richard P.
Seib, Appellants,

v.

AMERICAN SAVINGS AND LOAN
ASSOCIATION OF BRAZORIA
COUNTY, Appellee.

No. C14–88–885–CV.

Court of Appeals of Texas,
Houston (14th Dist.).

July 5, 1990.

Rehearing Denied Sept. 6, 1990.

Gary L. McConnell, Angleton, for appellants.

George T. Wommack, Jr., Lake Jackson, for appellee.

Before PAUL PRESSLER, CANNON and ELLIS, JJ.

## OPINION

PAUL PRESSLER, Justice.

This is an appeal of a case concerning the sale and financing of loan and servicing rights. We modify the judgment so as to award appellee its attorney's fees in accordance with the jury's findings in answer to Special Issue No. 24. The judgment is affirmed in all other respects.

On September 20, 1986, the parties entered into contracts, effective July 31, 1986, for the sale and financing of certain loan and servicing rights owned by appellee American Savings and Loan Association of Brazoria County ("American") to appellant AmSav Group, Inc. Difficulties arose, and in May 1987 American filed suit against AmSav and appellant Richard Seib regarding those contracts. Shortly thereafter, American sued for payment of certain promissory notes. The trial court consolidated the two actions. AmSav asserted various counterclaims. The case was tried to a jury, which returned a substantial verdict for American.

AmSav and Seib appeal the judgment with seventeen points of error, and American asserts several cross-points. In point of error one, appellants argue that the judgment is void and unenforceable as a matter of law because the trial judge, having been invalidly appointed to hear this cause, lacked authority to enter the judgment.

At the request of the presiding judge of the Second Administrative Judicial Region, Chief Justice of the Supreme Court of Texas, John L. Hill, Jr., assigned the Honorable Thomas F. Coleman to preside over this trial as a visiting judge. Justice Coleman resides within the same administrative region as the court to which he was assigned. The assignment of judges is governed by TEX.GOV'T.CODE ANN. §§ 74.-001–.105 (Vernon 1988 and Supp.1990). *State v. Preslar,* 751 S.W.2d 477, 479 (Tex. 1988). Under this chapter, specifically §§ 74.002 and 74.057, the Chief Justice has the power to assign judges from one administrative region to another. *Id.* However, under § 74.056, the presiding judge of the administrative region is given the authority to assign judges residing within the region. According to § 74.049, the Chief Justice may act for the presiding judge and make assignments within an administrative region when the latter is incapacitated, dies, resigns or disqualifies himself. *Id.* None of those circumstances existed in this case. Appellants argue that the assignment was therefore invalid. *See id.*

Appellants admit, however, that they did not object to Justice Coleman's assignment prior to perfecting their appeal. They contend that the error must, therefore, turn on whether the invalid assignment is void or voidable. If the assignment is void, it may be attacked in any court at any time. There is nothing, however, to show that the order is void. It is merely voidable.

Appellants cite a number of cases in support of their argument, but what distinguishes this case is appellants' failure to object to the assignment prior to trial. Under Texas law, the disqualification of a judge on non-constitutional grounds is waived if not raised by a proper motion to recuse. *Humble Exploration Co. v. Browning,* 677 S.W.2d 111, 114 (Tex.App. —Dallas 1984, no writ) (citing *Buckholts Indep. School Dist. v. Glaser,* 632 S.W.2d 146, 148 (Tex.1982)). Section 74.053 of the Government Code sets out the procedure for objecting to an assigned judge. Section 74.053(c) states that such objection must be filed before the first hearing or trial, including pretrial hearings, over which the assigned judge is to preside. (Vernon Supp.1990); *see also Thompson v. State*

*Bar of Texas,* 728 S.W.2d 854, 855 (Tex. App.—Dallas 1987, no writ).

This case took six weeks to try and produced a thirty-volume statement of facts. To reverse the judgment on this issue alone in light of appellants' failure to object to Justice Coleman's assignment prior to trial would be a misuse of judicial resources. Point of error one is overruled.

■ In points of error two, three and four, appellants contend that the trial court erred in overruling their objections to the testimony of certain witnesses. Appellants claim that William Michael Yentzen and Dan Rood were not identified in answers to interrogatories as persons having knowledge of relevant facts. They also claim that appellee failed to supplement the deposition testimony of Stacy Smith prior to trial.

Appellee's response to an interrogatory asking for the names and addresses of all persons having knowledge of relevant facts gave a long list of names, including "Board of Directors of American Savings and Loan Association and American Savings Mortgage Corporation." The answer further directed appellants to refer to the depositions taken in this cause. Six days prior to the response, appellants took the deposition of the chairman of the board, who identified its members, including Yentzen. Appellants subsequently took Yentzen's deposition twice. We note that appellants responded similarly to an interrogatory propounded by appellee. While this is probably a questionable way to identify persons in response to an interrogatory, this is not a case where witnesses were not identified at all. Appellants had Yentzen's name and had taken his deposition. Therefore, Yentzen was sufficiently identified in answers to interrogatories.

■ Rood was not identified by appellee in response to interrogatories and was, therefore, not permitted to testify during appellee's case in chief. However, he was allowed to testify in rebuttal. Appellants had alleged that Rood, Chris Scruggs and appellee had conspired to depose appellee's chairman of the board and rid appellee of its contractual entanglements with AmSav.

Rood testified very briefly. He identified himself and denied Seib's testimony that he had told Seib the chairman would be removed and then he and Scruggs would be running the savings association. Appellants claim this testimony was harmful in light of the take nothing judgment on their conspiracy counterclaim.

Appellants themselves had identified Rood in answers to interrogatories and had deposed him. Rood was, therefore, known to appellants. In addition, as appellee stated at trial, good cause existed to permit the testimony to deny statements that appellee could not anticipate prior to trial. *See Gannett Outdoor Co. of Texas v. Kubeczka,* 710 S.W.2d 79, 83–85 (Tex.App.—Houston [14th Dist.] 1986, no writ).

■ Stacy Smith was appellee's senior vice-president for finance. During Smith's deposition, he was asked about his knowledge of the damages claimed by appellee. He responded that his calculations were incomplete but that they should be completed and furnished to appellants within two weeks, which was when the case was set for trial. The trial was continued, and the calculations were actually given to appellants at 1:30 p.m. the day before Smith testified. Appellants claim the admission of Smith's damages calculations was harmful because the jury's answers to the damages questions virtually tracked them.

At issue here is the supplementation of deposition testimony. Appellants agree that there is no reported Texas case specifically addressing the duty of a party to supplement the testimony and evidence produced at a deposition. *But cf. Farm Services, Inc. v. Gonzales,* 756 S.W.2d 747, 749–51 (Tex.App.—Corpus Christi 1988, writ denied) (appellate court found convincing argument that witness should not be allowed to testify to opinions differing from those expressed in her deposition; however, error was not properly preserved). Nonetheless, appellants argue that depositions are defined as discovery in Tex.R.Civ.P. 166b and should be subject to the sanctions of Tex.R.Civ.P. 215(5).

Smith agreed in his deposition to furnish his calculations to appellants as soon as they were complete. Smith testified that they were completed on December 15th. Appellants received them on December 16th. Due to the two-week holiday recess in the trial, which occurred during Smith's testimony, appellants had an opportunity to analyze the numbers and to prepare for his continued cross-examination. Given these facts, the calculations were properly admitted. Points of error two, three and four are overruled.

Appellants' next two points of error are evidentiary challenges. In point of error five, they argue that the jury's failure to find that appellee waived its right to collect interest on the $10,000,000 promissory note in excess of the amount actually paid by AmSav was contrary to the great weight and preponderance of the evidence. In point of error six, appellants assert the same argument regarding the jury's failure to find that appellee should have been estopped by its conduct from collecting that interest.

AmSav executed a $10,000,000 promissory note, payable to appellee, with principal and interest to be paid according to the terms of the note. Appellee determined that appellants were not paying the monthly interest installments as they accrued. Appellee demanded payment, and when the note was not brought current, appellee accelerated the note and sued for the balance. Appellants contend, however, that appellee accepted interest payments based on AmSav's calculations of the amounts due and, therefore, waived its right to collect interest in excess of that amount or should be estopped from collecting it.

■ Where the complaining party asserts that a negative finding is against the great weight and preponderance of the evidence, all the evidence must be reviewed, both for and against the issue, in making a determination. *M.J. Sheridan & Son Co. v. Seminole Pipeline Co.,* 731 S.W.2d 620, 623 (Tex.App.—Houston [1st Dist.] 1987, no writ). Appellants base their argument on the testimony of David Paulson, appellee's vice president and treasurer at the time. Paulson was responsible for collecting the payments on the loan. Appellants argue that all of the facts and knowledge gained by him in the discharge of these responsibilities are imputable to appellee. Paulson testified that he verified each payment made by AmSav and that he never found an incorrect calculation. He stated further that the loan was never delinquent. He also testified that he discussed how the interest was calculated with appellee's chairman of the board.

■ Waiver is an intentional relinquishment of a known right or intentional conduct inconsistent with claiming that right. *Sun Exploration and Prod. Co. v. Benton,* 728 S.W.2d 35, 37 (Tex.1987). Among the elements of estoppel are (1) a false representation or concealment of material facts (2) made with knowledge of the facts. *See Traylor v. Gray,* 547 S.W.2d 644, 652 (Tex.Civ.App.—Corpus Christi 1977, writ ref'd n.r.e). Intent and knowledge were both put at issue in the testimony. Ben Hardin, appellee's general counsel, testified that he asked Paulson several times in November and December if interest was being paid, and Paulson assured him it was. In March Hardin asked to see the figures and saw that the payments were much smaller than expected. He then asked Paulson why he had reassured him. Paulson's response was that AmSav had told him this was the correct amount and that he had taken their word for it. Paulson also said he had never read the note to find out its terms. Appellee's president Jim Donovan and its chairman of the board, B.G. Wylie, also testified that Paulson said the note was being paid properly. Wylie denied that Paulson ever explained to him how he was calculating the principal and interest on the loan. Paulson, of course, disputed this testimony.

The jury also heard testimony that appellee had terminated Paulson for reasons that are in dispute. He then went to work within a week or two for the corporation that owns AmSav. The trier of fact is the sole judge of the credibility of a witness and the weight to be given his testimony. *Rego Co. v. Brannon,* 682 S.W.2d 677, 680

(Tex.App.—Houston [1st Dist.] 1984, writ ref'd n.r.e). Based upon the above, the jury's failure to find waiver and estoppel was not contrary to the great weight and preponderance of the evidence. Points of error five and six are overruled.

■ In points of error seven and eight, appellants maintain that there was legally and/or factually insufficient evidence to support the jury's findings that appellants made a negligent representation to appellee and that appellee was damaged in the amount of $1,000,000 by any negligent representation by appellant Seib. Appellants do not complain of the jury's finding of fraudulent representation. When reviewing legal sufficiency points, this court must consider only the evidence and inferences which support the challenged jury finding and must disregard all contrary evidence and inferences. *Davis v. City of San Antonio*, 752 S.W.2d 518, 522 (Tex.1988); *Garza v. Alviar*, 395 S.W.2d 821, 823 (Tex. 1965). When reviewing factual sufficiency points of error, the court must consider and weigh all of the evidence, both that in support of and that contrary to the finding, and set it aside only if it is so against the great weight and preponderance of the evidence as to be manifestly unjust. *In re King's Estate*, 150 Tex. 662, 244 S.W.2d 660, 661 (1951).

■ The tort of negligent misrepresentation imposes liability upon the following:

> One who, in the course of his business, profession or employment, or in any other transaction in which he has a pecuniary interest, supplies false information for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by their justifiable reliance upon the information, if he fails to exercise reasonable care or competence in obtaining or communicating the information.

RESTATEMENT (SECOND) OF PROPERTY § 552(1) (1977); *Blue Bell, Inc. v. Peat, Marwick, Mitchell & Co.*, 715 S.W.2d 408, 411 (Tex.App.—Dallas 1986, writ ref'd n.r.e). Appellee alleged that AmSav represented that (1) it had the ability to service appellee's and its investors' loans properly; (2) it had personnel experienced in servicing FHA Title 1 program loans; and (3) it would not compete with appellee in the buying and selling of FHA Title 1 paper.

Several witnesses testified that during negotiations James Joiner, president of AmSav, represented that he was experienced in servicing loans, would improve servicing and would buy appellee's loan production. Wylie testified that while he thought Joiner was "kind of a blowoff," he had a lot of confidence in Seib, who supported Joiner's statements. Seib denied claiming expertise in servicing F.H.A. Title I loans, but members of the board testified otherwise. Michael Yentzen testified that Joiner represented that AmSav was an expert in Title I loans and that Seib agreed with Joiner. In addition, Seib and Joiner had reviewed appellee's operations and knew what type of loans it handled.

There was testimony that when AmSav took over the servicing of appellee's loans, it did not have the ability to service the loans properly. Also, the servicing operation was understaffed, inexperienced and untrained. A partner at Ernst & Whinney testified that AmSav was not servicing the loans in a "proper business and prudentlike manner" and that it was not in compliance with federal standards. The Department of Housing and Urban Development found the lack of an effective servicing system a matter of serious concern. Seib himself admitted that while the Loan Servicing Purchase Agreement stated that the loans would be serviced by an F.H.A.-approved servicing agent, AmSav was not so approved. Seib also admitted that he had no background in operating a mortgage company.

■ This is evidence that satisfies the language of the Restatement. Members of the appellees' board relied on those representations when they voted to approve the contracts. Furthermore, appellants are liable for any pecuniary loss caused by appellee's justifiable reliance. A senior vice-president of appellee, James Clooney, who sold the loans that appellee originated, testified that prior to AmSav's servicing, appellee was successful in selling its product.

Post AmSav, it had a bad reputation for servicing and delinquency, which is the primary reason he has been unsuccessful in selling the loans. He testified that the profit appellee would make on loans that are now available for sale would be $1,560,000. Appellants offered no evidence to rebut that testimony. Evidence is factually sufficient to support a damage award if the jury can ascertain the amount of damages with reasonable certainty. *Greenstein, Logan & Co. v. Burgess Marketing, Inc.,* 744 S.W.2d 170, 187 (Tex.App.—Waco 1987, writ denied). If the injured party produces the best evidence of his damages available and if such evidence provides a reasonable basis for determining his loss, he is entitled to a recovery although the exact amount of the damages cannot be ascertained. *Id.* Measured against these rules, the evidence is both legally and factually sufficient to support the damage award. Points of error seven and eight are overruled.

In point of error nine, appellants challenge the legal and factual sufficiency of the evidence to support the jury's finding that Seib used AmSav as a sham to perpetrate a fraud. In point of error ten, they argue that the trial court erred in refusing to submit their special issue asking whether appellee was estopped to claim that Seib was individually liable for AmSav's debts.

To prove that there has been a sham to perpetrate a fraud, tort claimants must show only constructive fraud. *Castleberry v. Branscum,* 721 S.W.2d 270, 273 (Tex.1986). Constructive fraud is the breach of some legal or equitable duty which, irrespective of moral guilt, the law declares fraudulent because of its tendency to deceive others, to violate confidence, or to injure public interests. *Archer v. Griffith,* 390 S.W.2d 735, 740 (Tex.1964).

AmSav was formed by Seib and his business associate Jim Joiner for the express purpose of acquiring loan servicing rights from appellee. At the time it was formed, Seib and Joiner subscribed to all of its shares, but the consideration for those shares was never paid. In fact, no capital contribution was made to the corporation until Texas Southwest Realty purchased the stock on February 23, 1987. Joiner was later removed as an officer and director of the company and the shares of stock rescinded for failure to tender the cash consideration. The shares were then owned by various entities with ties to Seib, such as Texas Southwest Realty, of which he was an officer, the Seib Children's Trust and First Southern Financial Corporation, where Seib was also an officer and director. The companies were ultimately held by a family trust with Seib as trustee. Once Joiner was removed, AmSav's board of directors consisted of Seib, his wife, who did not attend board meetings, and an officer of AmSav. Seib agreed that he had a very prominent role in the direction of AmSav and would have the same in any company in which he was president or chief executive officer.

In May 1987 Seib instructed AmSav employees to withhold $500,000 from the monthly remittance due appellee under the servicing agreements. In December 1987 he again instructed employees to withhold $1,000,000 from the amounts due appellee. Seib testified that the $500,000 was to be paid into the registry of the court until the lawsuit was resolved. The second amount was withheld in a dispute over insurance requirements. There was testimony that AmSav engaged in a scheme to collect excessive late charges by not working a loan until it became fifteen days past due; that it failed to pay for loans delivered to it for purchase but claimed ownership and serviced those loans; and that it charged appellee for servicing loans that had been removed from their system. There is also the testimony that AmSav represented to appellee that it would buy appellee's Title I loan production but then refused to do so. Finally, there was testimony that appellants solicited appellee's dealers, or originators of the loans, using appellee's proprietary information. Seib evidently believed there was money to be made on the origination end, and he wanted some of it.

It was for the jury, as the trier of fact, to judge the credibility of the witnesses, the weight to be given their testimony and to resolve any conflicts or inconsistencies in

the testimony. We may not substitute our judgment for that of the jury if the challenged finding is supported by some evidence of probative value and is not against the great weight and preponderance of the evidence. *Klein v. Sporting Goods, Inc.,* 772 S.W.2d 173, 176 (Tex.App.—Houston [14th Dist.] 1989, writ denied). Given the evidence, the jury could have concluded that Seib manipulated appellee through AmSav to maximize his profits. The finding that he used AmSav as a sham to perpetrate a fraud is not so against the great weight and preponderance of the evidence as to be manifestly unjust.

■ Appellants' complaint concerning their estoppel issue is waived. At the end of the objections to the charge, appellants stated that in reviewing the refused submissions, they had found two originals that had not been marked as refused and were omitted from the charge. The record does not indicate precisely what those issues were or that the trial court actually refused them. There is no record of the issues in the transcript. Rule 278 of the Texas Rules of Civil Procedure mandates the manner in which requested issues shall be made, and merely dictating a requested issue into the record is not sufficient. *Woods v. Crane Carrier Co.,* 693 S.W.2d 377, 379 (Tex.1985). Points of error nine and ten are overruled.

Appellee argues in a cross-point that the trial court erred in failing to submit the issue of alter ego to the jury. However, appellee also states that the theory was pled as an alternative theory for disregarding the corporate fiction. Furthermore, appellee admits that the court's refusal of the issue was cured since the evidence also supports the finding that Seib used AmSav as a sham to perpetrate a fraud. In light of our ruling on appellants' point of error nine, it is not necessary to address this cross-point. The cross-point is therefore overruled.

■ Appellants contend in point of error eleven that the trial court abused its discretion in refusing to grant leave to file their third amended original answer and in striking the answer. On October 19, 1987, the trial court continued the trial to November 9th and imposed a November 2nd deadline for filing amended pleadings. This was the second time the case had been re-set and the second pretrial order. On November 13, 1987, appellants sought leave to file their third amended original answer in which they asserted that the terms "delivery" and "undelivered" in the Commitment were ambiguous. The trial actually commenced on November 30th.

■ Rule 63 of the Texas Rules of Civil Procedure provides that any amendment offered for filing within seven days of the date of trial or thereafter, or after such time as may be ordered by the judge under a pretrial order, shall be filed only after leave of the judge is obtained. That leave shall be granted unless there is a showing that the amendment will operate as a surprise to the opposing party. "The date of trial" means the day a case is set for trial and not the day the case actually goes to trial. *Forest Lane Porsche Audi Associates v. G. & K Services, Inc.,* 717 S.W.2d 470, 473 (Tex.App.—Fort Worth 1986, no writ). The trial court's decision to grant or deny leave to file a trial amendment is discretionary, and the decision should not be disturbed without a clear showing of abuse of discretion. *Id.* When an amendment has been refused by the trial court, the burden of showing an abuse of discretion is on the complaining party *Hardin v. Hardin,* 597 S.W.2d 347, 349 (Tex.1980).

■ Appellants raised the issue of intent in their amended response to appellee's motion for summary judgment filed October 30th, but did not specifically mention the word "ambiguity". This they sought to do in their third amended original answer. However, appellants filed their second amended original answer on November 2nd, three days after the response, and could have included the issue of ambiguity in that answer. Where it appears that the new matter was known to the parties seeking to file the amendment, or by reasonable diligence, it could have been known at such a time as would have enabled them to include it in their former plea, the request should be denied. *Valdez*

*v. Lyman–Roberts Hosp., Inc.*, 638 S.W.2d 111, 117 (Tex.App.—Corpus Christi 1982, writ ref'd n.r.e). Appellants have, therefore, failed to show a clear abuse of discretion. Point of error eleven is overruled.

 In point of error twelve, appellants argue that the trial court erred in entering judgment in favor of appellee on the $10,-000,000 promissory note because the jury's answers to Special Issues Nos. 5A and 45 were in conflict with its answer to Special Issue No. 44. They also argue, in point of error thirteen, that the court erred in disregarding the jury's answer to Special Issue No. 44 and finding as a matter of law that AmSav was not entitled to any credit against the promissory note of May 15, 1987, because the jury's answer was material and supported by evidence.

In a cross-point, appellee asserts that the trial court erred in submitting Special Issue No. 44 to the jury because there was no evidence, or legally insufficient evidence upon which to submit the issue as it was framed. In Special Issue No. 44, the jury was asked to find the principal amount of the credit that AmSav was entitled to obtain against the $10,000,000 note under the terms of the Commitment as of May 15, 1987.

Appellants maintain that evidence supporting the answer exists in the testimony of appellee's expert Michael Jones. At one point during his testimony, he stated that AmSav was entitled to a credit against the note calculated as of July 8, 1987. He also testified that AmSav was entitled to the reduction of the credit as of the date of call and demand on the note. Appellee points out, however, that at no time did Jones state that this date was May 15th. The Commitment states the credit is only due upon termination and demand, and termination did not occur until July 8th. Since there was no evidence concerning the May 15th date, the issue should not have been submitted and was properly disregarded by the trial court. *Bray v. McNeely*, 682 S.W.2d 615, 620 (Tex.App.—Houston [1st Dist.] 1984, no writ). Appellee's cross-point is sustained and points of error twelve and thirteen are overruled.

 In point of error fourteen, appellants contend that the trial court erred in overruling their motion for judgment non obstante veredicto because appellee charged appellants usurious interest as a matter of law. In point of error fifteen, they contend that the jury's finding in response to Special Issue No. 45 that AmSav had the full use and benefit of $10,000,000 on the $10,000,000 promissory note on May 15, 1987, was contrary to the overwhelming weight and preponderance of the evidence.

A trial court may grant a motion for judgment non obstante veredicto only if there is no evidence to support the jury's findings. *Carr v. Galvan*, 650 S.W.2d 864, 867 (Tex.App.—San Antonio 1983, writ ref'd n.r.e). Appellants argue that "the only reasonable construction of the note and Commitment is that the parties intended that AmSav pay interest only on eight percent of the loans 'delivered' ", rather than on the full principal balance. However, they offer no evidence to that effect. In the full use and benefit finding, in answer to another special issue, the jury found that execution of the note by AmSav was the only thing of value received by appellee in exchange for its promise to deliver loans to AmSav for purchase under the Commitment. There was testimony that this was good and valuable consideration for the transaction. There is thus evidence to support the jury's findings. Points of error fourteen and fifteen are overruled.

 Finally, in point of error sixteen, appellants maintain that the trial court's judgment is erroneous insofar as it awards damages of $3,963,669.26 to appellee for breach of the agreements because appellee did not plead for damages for such breach. They further argue in point of error seventeen that the trial court erred in admitting evidence of amounts of monies withheld by AmSav from the December 1987 remittance to appellee over appellants' objection and also in entering judgment in favor of American for $1,221,007.45 as found by the jury to have been wrongfully withheld by AmSav because appellee did

not plead for damages for breach of the agreements.

In its first trial amendment to its fourth amended petition, appellee asserted that it had been damaged by at least $1,182,333.88 because of AmSav and Seib's breach of the Loan Servicing Purchase Agreement and Sub-servicing Agreement. Furthermore, appellants admit they failed to object to the special issue specifically on the basis of lack of pleadings. A party objecting to the charge must point out distinctly the matter to which he objects and the grounds for the objection or it is waived. *Davis v. Campbell*, 572 S.W.2d 660, 663 (Tex.1978); TEX.R. CIV.P. 274. There is thus no merit to appellants' arguments, and points of error sixteen and seventeen are overruled.

Appellee brings two cross-points on appeal. Appellee first argues that the trial court erred when it refused to award appellee its attorney's fees on the basis that the causes of action were so intertwined.

Ordinarily, when one or more causes of action for which attorney's fees are not permitted by statute or agreement are alleged in the petition, investigated and pursued at trial, it is incumbent upon the party asserting those causes of action to segregate them from those for which attorney's fees can be recovered. *Kosberg v. Brown*, 601 S.W.2d 414, 418 (Tex.Civ.App. —Houston [14th Dist.] 1980, no writ). However, when the causes of action are intertwined to the point of being inseparable, the party suing for attorney's fees may recover those fees even though under one or more of the causes of action attorney's fees are not recoverable. *Village Mobile Homes, Inc. v. Porter*, 716 S.W.2d 543, (Tex.App.—Austin 1986, writ ref'd n.r.e).

Attorneys from both sides testified as to the difficulty of segregating fees in this case. Appellee filed suit to recover under several notes. They also alleged that because of appellants' breach of contractual obligations, the contracts should be cancelled and appellee recover its damages. Appellee further sued to recover damages for negligent and fraudulent misrepresentations made to induce appellee to enter into the contracts. The facts supporting the breach of contract claims and the misrepresentation claims required proof of essentially the same facts by the same witnesses. The causes of action were so intertwined that appellee was not required to segregate its attorney's fees. Appellee's first cross-point is sustained.

Appellee's second cross-point is an alternative argument for attorney's fees. As the first argument is sustained, the second is not addressed.

The judgment of the trial court is modified to include attorney's fees in accordance with the jury's answer to Special Issue No. 24. The judgment is affirmed as modified.