**Renee K. FRANCIS, Appellant,**

v.

**The DOW CHEMICAL COMPANY and Joseph Hegyesi, Appellees.**

**No. 01–98–01435–CV.**

Court of Appeals of Texas, Houston (1st Dist.).

Feb. 10, 2000.

1. *Hall v. State,* 13 S.W.3d 115, 120 (Tex. App.—Ft. Worth 2000).

2. *Id.*

Barbara J. Gardner, Schweinle, Parish & Lowerre, P.C., Houston, for Appellant.

Barbara L. Johnson, Wickliff & Hall, P.C., Houston, for Appellee.

Panel consists of Justices O'CONNOR, HEDGES, and PRICE.*

## OPINION

O'CONNOR, Justice.

This is an employment discrimination case in which Renee Francis sued Dow Chemical Company and Joseph Hegyesi (collectively, the defendants), alleging, among other things, fraud, sex and age discrimination, and retaliatory discharge. The trial court granted summary judgment in favor of the defendants on Fran-

cis's fraud claim.[1] A jury found Dow liable on Francis's retaliation claim, but awarded no damages. The jury found no liability on Francis's discrimination claims. We reverse and remand.

## I. Background

In May 1987, Francis began full-time employment as an accountant with Dow at its manufacturing facility in Freeport, Texas. In 1991, she accepted a promotion to staff accountant at Dow's Plastic Lined Pipe facility in Bay City, Michigan.

In 1993, Francis requested a transfer to Houston, Texas. She interviewed with Hegyesi, who was the director of Dow's Strategic Center[2] in Houston, Texas. At trial, Francis testified that Hegyesi offered, and she accepted, a position as supply manager over the electrical component of the Strategic Center. Francis said Hegyesi told her the minimum "points" for the supply manager's job was 238.[3] Contrary to Francis, Hegyesi testified that he told Francis his group needed someone to collect data, and he offered her a position as a data analyst. In August 1993, Francis moved to Houston to begin work at the Strategic Center.

When Francis began work at the Strategic Center, she performed the job of a supply manager. About one and one-half months later, she discovered that her job points had not changed from 181, the level at which she came into the center. During her annual review on February 11, 1994, Francis mentioned to Hegyesi that male

* The Honorable Frank C. Price, former Justice, Court of Appeals, First District of Texas at Houston, participating by assignment.

1. The defendants moved for summary judgment on all of Francis's claims. The trial court rendered summary judgment on Francis's claims of fraud, misrepresentation, and defamation. On appeal, Francis challenges only the rendering of summary judgment on her fraud claim.

2. The Strategic Center implements purchasing strategy so that it is uniform throughout North America.

3. As discussed further below, Dow uses a "point" system to rank jobs and determine compensation levels.

supply managers had more points than she did and they were paid more. She asked Hegyesi how he would rectify the discrepancy. Nothing changed.

On February 28, 1994, Francis filed a charge with the Equal Employment Opportunity Commission based on age and sex discrimination. On March 8, 1994, Hegyesi called Francis into his office and accused her of coming into work late and not being in the office for a full day's work. Hegyesi told her to keep a time log to record her coming and going from the office. Hegyesi also asked his secretary to keep a log of Francis's arrival and departure times. A few weeks later, Hegyesi called Francis back into his office to check her time log. When Francis's log did not match that kept by Hegyesi's secretary, Hegyesi sent Francis to the human resources department to be assigned a door from which she would enter and leave the office so that her electronic badge could be monitored daily.

Francis resigned in May 1994.

## II. Fraud Claim

In point of error one, Francis asserts the trial court erred in granting Dow and Hegyesi's "no-evidence" summary judgment motion.

Francis alleged that Dow misrepresented what her position would be within the Strategic Center and the level of points she would receive if she accepted a job with the center. Francis contended Hegyesi told her she would be a supply manager for North America, that the points for her position would be at least 238, and she would be raised to the next level in points within one year. Francis alleged Dow made these representations to her to induce her to transfer to Dow's Houston office.

In their motion for summary judgment, the defendants alleged Francis could not establish a prima facie case of fraud because there was no evidence on any of the elements of fraud. The trial court granted the motion for summary judgement, without stating its grounds, and dismissed Hegyesi as a party to the lawsuit.

### A. Standard

In a no-evidence summary judgment, the movant must specifically state the elements as to which there is no evidence. Tex.R.Civ.P. 166a(i). The burden then shifts to the non-movant to bring forth evidence that raises a fact issue on the challenged elements. *Id.* When reviewing the grant of a no-evidence summary judgment, we review the evidence in the light most favorable to the non-movant, disregarding all contrary evidence and inferences. *Merrell Dow Pharmaceuticals, Inc. v. Havner,* 953 S.W.2d 706, 711 (Tex.1997). A no-evidence summary judgment is improperly granted if the non-movant brings forth more than a scintilla of evidence to raise a genuine issue of material fact. Tex.R.Civ.P. 166a(i). There is less than a scintilla of evidence when the evidence is "so weak as to do no more than create a mere surmise or suspicion." *Kindred v. Con/Chem, Inc.,* 650 S.W.2d 61, 63 (Tex.1983). Conversely, there is more than a scintilla of evidence when the evidence "rises to a level that would enable reasonable and fair-minded people to differ in their conclusions." *Burroughs Wellcome Co. v. Crye,* 907 S.W.2d 497, 499 (Tex.1995).

### B. Evidence of Fraud

A fraud cause of action requires (1) a material misrepresentation, (2) that was either known to be false when made or was asserted without knowledge of its truth, (3) which was intended to be acted

upon, (4) which was relied upon, and (5) which caused injury. *Formosa Plastics Corp. USA v. Presidio Eng'rs and Contractors, Inc.*, 960 S.W.2d 41, 47 (Tex. 1998). A promise of future performance constitutes an actionable misrepresentation if the promise was made with no intention of performing at the time it was made. *Id.* at 48.

■ Francis said she first spoke to Mike Gambrell, her supervisor, in March 1993 about her chances of relocating to Houston, Texas. Although Francis wanted to move to Houston because her fiancé was moving there, she told Gambrell she was unwilling to relocate unless it was a good career move for her. Francis said that when she interviewed with Hegyesi in May 1993, he told her the minimum points for the supply manager position were 238, which he could probably raise to 274 within the year. Francis said Hegyesi offered her the position of supply manager. In her affidavit, she stated the following:

> Joe Hegyesi promised and offered me the position of North American Supply Manager and promised me clearly, distinctly and unequivocally that the job would carry a minimum of 238 "job points" or "Hay Points." That was very important to me because of its significance for pay, prestige and career advancement within Dow. Hegyesi made the offer of 238 points to induce me to take the new assignment. In reliance on his promise of a position with 238 job points, at a minimum, I accepted his offer.

> . . .

> I was paid less than the male Supply Managers, and I should have been paid at least as much as Jeff May or Richard Savage who had comparable experience and years with the company. . . . Based on the breadth of my qualifications and our similar successes throughout the earlier years with Dow Chemical, I would have continued to be promoted and given raises as Richard and Jeff have been, but for the discrimination. Also, had I not have been forced to leave Dow because of the intolerable conditions there, I would also have continued to receive employment benefits which I currently do not receive. Furthermore, I would have received that salary, with raises, and employment benefits until my retirement at age 65. My economic losses were substantial, and our economic expert, Dr. Donald Huddle, will explain these at trial.

Francis's summary judgment evidence included copies of (1) her business card, on which her title read "Supply Manager";[4] (2) a 1993 internal Dow announcement that Francis had been named supply manager, she would report to Hegyesi, and she would relocate to Houston, Texas; (3) a 1993 internal Dow announcement that Francis was replacing another individual as North American electrical supply manager; and (4) various Dow organizational charts showing her position as a supply manager.

Dow and Hegyesi submitted excerpts from Hegyesi's deposition in which he said he did not intend to make Francis a supply manager, he did not offer Francis the supply manager position, and he did not tell her she would become a supply manager in the future. Hegyesi said he hired Francis as a data analyst. Hegyesi said he told Francis, when they discussed the data analyst position, that he thought the points

4. Dow furnished the business cards. Hegyesi's secretary ordered the cards with Hegyesi's approval.

would be between 181 and 238, most likely at 208.

## C. Conclusion

The defendants characterize Francis's summary judgment proof as nothing more than self-serving, conclusory, and unsubstantiated assertions that are not competent summary judgment evidence. However, viewing Francis's summary judgment proof in the light most favorable to her, and disregarding all contrary evidence and inferences, we hold that Francis's summary judgment proof is more than a scintilla of evidence, sufficient to raise a fact issue regarding her fraud claim and defeat the defendants' entitlement to a no-evidence summary judgment. *See Hellman v. Mateo,* 772 S.W.2d 64, 66 (Tex.1989) (nonmovant's own deposition testimony sufficient to raise fact issue concerning whether she knew or reasonably should have known about movant's alleged misdiagnosis within two years of its occurrence); *Harris v. The Spires Council of Co–Owners,* 981 S.W.2d 892, 896 (Tex.App.—Houston [1st Dist.] 1998, no pet.) (movant's witness's statement that the Spires did not recommend Prudencio to the nonmovants was a statement of fact, not opinion); *City of Harlingen v. Vega,* 951 S.W.2d 25, 28–29 (Tex.App.—Corpus Christi 1997, no writ) (nonmovant's statements about what police officers did to her when she was arrested was competent summary judgment proof because the source of her knowledge was her personal experience).

We sustain point of error one and reverse the summary judgment.

## III. Discrimination Claim

In point of error two, Francis asserts the evidence was legally and factually insufficient to support the jury's finding that sex and age were not motivating factors in Dow's promotion or compensation decisions with respect to her.

Because we sustain points of error three, four, and five, as discussed further below, we do not reach the merits of Francis's factual sufficiency complaint under point of error two. However, because we reach the merits of her legal sufficiency complaint, we will discuss the parties' contentions under point of error two.

Francis sued Dow under the Texas Commission on Human Rights Act (TCHRA), which prohibits discrimination on the basis of gender and age (individuals who are 40 years or older). *See* Tex.Lab. Code § 21.001 *et seq.* Francis alleged she was a supply manager who was placed two levels below the male supply managers in job points and paid less.

The TCHRA has as its express purpose "the execution of the policies embodied in Title VII of the federal Civil Rights Act of 1964, as amended (42 U.S.C. Section 2000e *et seq.*)." *Schroeder v. Texas Iron Works, Inc.,* 813 S.W.2d 483, 485 (Tex.1991). One of the purposes behind this act is the "correlation of state law with federal law in the area of discrimination in employment." *Id.* Therefore, when reviewing a case, we may look to federal case law interpreting Title VII[5] when determining the burdens of proof under the TCHRA. *Farrington v. Sysco Food Serv.,*

---

5. Title VII provides that "[i]t shall be an unlawful employment practice for an employer—(1) to fail or refuse to hire or to discharge any individual ... because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e–2(a)(1). The Age Discrimination in Employment Act of 1967 (ADEA) proscribes similar treatment on the basis of age. 29 U.S.C. § 623(a)(1). The same evidentiary procedure for allocating burdens of proof applies to discrimination claims under both statutes. *Meinecke v. H & R Block of Houston,* 66 F.3d 77, 83 (5th Cir.1995).

*Inc.*, 865 S.W.2d 247, 251 (Tex.App.— Houston [1st Dist.] 1993, writ denied).

### A. Dow's evidence

██ Dow contended Francis was a data analyst and not a supply manager. Dow presented evidence with regard to its compensation system and its ranking of jobs and individuals. Dow also presented evidence with regard to the experience and points of the male supply managers that would justify the compensation paid to those supply managers.

#### 1. Dow's system of ranking jobs and compensation

When Dow formed the Strategic Center, management decided that the supply manager position required individuals possessing a technical degree or who came out of the manufacturing, sales, or marketing areas. The individuals selected for the position would already be out of "progression."

One aspect of Dow's compensation system is the process known as being "in progression." At Dow, employees are generally in progression for eight to 12 years, a period during which they are considered to be "in training." Progression is different for technical employees (such as those with chemical or chemical-engineering degrees) as compared to nontechnical employees (such as those with an accounting degree).

Another aspect of Dow's compensation system is the use of "job points" and "personal points." Dow uses the "Hay Point System" to rank jobs, determine compensation levels, and achieve equity in compensation levels among its various job disciplines. Job points are intended to reflect the level of responsibility generally associated with a particular job. Howev-

er, the points associated with a job do not necessarily correspond to the salary of the individual performing the job. Rather, compensation is also determined by an individual's number of personal points. Dow normally promotes people in 15 percent point increments.[6]

Technical employees start at an entry point level of 138 points. Nontechnical employees start at a lower entry point level of 104 points. The top of progression for technical employees is 208 points, and for nontechnical employees it is 181 points. This means a technical employee is out of progression at 238 points, and a nontechnical employee is out of progression at 208 points.

When the Strategic Center was first formed, Johnson and Hegyesi discussed what would happen to the points of the employees who joined the group. Johnson said the center was so new they did not know how points would be assigned to the job. Therefore, they decided to bring employees into the Strategic Center on a lateral basis, at the same points they currently had in their previous position.

#### 2. The male supply managers

One of the male supply managers is older than Francis. Tary Schumacher was transferred to the Strategic Center as a supply manager in February 1993, at which time he was 43 years old, had 337 points, and had been with Dow 21 years. He had been the director of sales and marketing for a Dow subsidiary and had served as a district sales manager and production sales manager for Dow. As a supply manager, Schumacher was initially responsible for the electrical commodity and then, later, the pipe, valve, and fitting

---

6. If, for example, a job starts at 138 points, the points will increase to 158, to 181, to 208, to 238, and so forth.

commodities. He had a bachelors degree in mechanical engineering.

Three of the male supply managers are younger than Francis.

Mike McComb is younger than Francis by four days. McComb transferred to the Strategic Center as a supply manager in March 1993, at which time he was 40 years old, had 274 points, and had been with Dow for 17 years. Francis admitted McComb had more experience than she and should have been paid more. He had been a supply manager since 1988 and was responsible for the mechanical, industrial, and research commodities. Before the Strategic Center was started, McComb had responsibility for all national contracts. McComb had a civil engineering degree and a masters degree in business administration.

Jeff May transferred to the Strategic Center in October 1993, at which time he was 32 years old, had 274 points, and had been with Dow for nine years. After joining Dow, May held a number of engineering jobs, rising to the level of superintendent of the laminates department of a Dow plant. The superintendent job included responsibilities for purchasing, contracting, and other matters concerning the overall operation of the laminates business. He had a bachelors degree in electrical engineering.

Richard Savage transferred to the Strategic Center in July 1993, at which time he was 31 years old, had 255 points, and had been with Dow for 8 years. After joining Dow in 1985, Savage worked in a number of sales positions, including sales manager for construction materials and product marketing manager. Savage had a bachelors degree in civil engineering.

Francis was replaced by John Curtiss. Curtiss was offered the supply manager position at the Strategic Center in March 1994, at which time he was 48 years old, had 447 points, and had been with Dow for 26 years. He had substantial experience in materials management and had held numerous positions in Dow, including director of management, supply manager, district sales manager, and production sales manager. Curtiss had a bachelor's degree in economics.

### 3. Dow's contentions about Francis

There is no dispute that Francis was given overall responsibility for electrical materials and the other supply managers were given overall responsibility for other commodities and services. However, Dow contended Francis's supply manager responsibilities were temporary because Francis had been hired as a data analyst, not a supply manager.

Before her transfer to purchasing, Francis had worked only as an accountant with Dow. She had been with Dow for six years. Francis did not have any experience in purchasing, technology, or any commercial areas, and she had never negotiated a contract with an outside vendor while at Dow. Francis had a degree in accounting and had taken a number of general business courses.

When Francis transferred to the Strategic Center, she had 158 points. Dow contended she was still in progression at this time and she was the only person in the Strategic Center still in progression. Johnson said Francis would not have gotten out of progression until she had 208 points.

Hegyesi testified he told Francis, during her annual review, that age was not a determining factor in how points were assigned; instead, the determining factor was length of service with the company and job-related experience.

### B. Francis's challenge to Dow's proffered reasons

Francis contends she was offered one of five supply manager positions. Although

she moved to Houston in August 1993, Francis officially became a part of Hegyesi's group in July 1993, when she was moved from the accounting organization to the purchasing organization. When Francis first started with the center, personnel records showed her title was supply manager. When Francis arrived at the Strategic Center, she received business cards on which were printed her name and the title "North American Supply Manager." Within days of her arrival, Francis made a presentation at which Hegyesi introduced her as the new North American supply manager. Other evidence of Francis's position as a supply manager included internal announcements that she had been named supply manager, various organizational charts showing her position as a supply manager, personnel documents showing her title as supply manager, and contracts with electrical suppliers executed by Francis as "North American Supply Manager."

In December 1993, Francis decided to copy her personnel file. In her file, she discovered a memorandum from Bob Gallant, a Dow executive vice president, stating that a "conclusion" had been reached by Dow's upper management to "reach down into the 30–35 year group, identify the best, and get them moved up into leadership roles."

During her annual review, Francis mentioned to Hegyesi that male supply managers had more points than she did and were paid more. She asked Hegyesi how he would rectify the discrepancy. Francis contended Hegyesi told her she should be happy with the situation as it was, given her age and the fact that she was a "second income."

Francis asserted May's and Savage's having one and two year's seniority was not a legitimate reason for paying them more because longevity with Dow was not a controlling factor in promotions or points. Francis testified she had commercial experience equal to Savage's and superior to that of May, including sales and marketing experience. She noted that neither May nor Savage had purchasing experience, whereas she had such experience from her position at Dow's polycarbonate plant. Francis contended her experience was superior to May's because he had no experience in sales, marketing, margins, analyzing market share, negotiating commodity prices, or negotiating contracts. She relied on Curtiss's testimony that it would be a drawback in the supply manager's job if the person had no commercial experience. Francis asserted she had completed progression in September 1993, having attained 181 personal points. She contended that the supply manager position did not require a technical degree.

We overrule point of error two, in part, as to Francis's complaint that the evidence was legally insufficient to support the jury's finding that sex and age were not motivating factors in Dow's promotion or compensation decisions with respect to her. We do not reach the merits of Francis's factual sufficiency complaint for reasons set forth below.

## IV. Evidentiary Rulings and Trial Court Bias

In points of error three through five, Francis asserts the evidence that she was a data analyst was inadmissible hearsay, the trial court abused its discretion in making various other evidentiary rulings, and the trial court demonstrated bias and prejudice towards her, thereby depriving her of a fair trial.

### A. Standard

The admission and exclusion of evidence is committed to the trial court's sound discretion. *City of Brownsville v.*

*Alvarado,* 897 S.W.2d 750, 753 (Tex.1995); *Seneca Resources Corp. v. Marsh & McLennan, Inc.,* 911 S.W.2d 144, 151 (Tex. App.—Houston [1st Dist.] 1995, no writ). For the admission or exclusion of evidence to constitute reversible error, an appellant must show (1) the trial court committed error and (2) the error was reasonably calculated to cause and probably did cause rendition of an improper judgment. *See* Tex.R.App.P. 44.1; *McCraw v. Maris,* 828 S.W.2d 756, 757 (Tex.1992); *Seneca,* 911 S.W.2d at 151.

### B. Arrest of Francis's son

■ Francis contends the trial court erred by admitting evidence about the arrest of her son involving marijuana because this evidence was irrelevant and prejudicial.

At trial, Francis's counsel asked Francis's husband if something happened in September 1993 that unsettled her. The husband responded that her behavior changed and she was not the same as she was when she was a supply manager. On cross-examination, Francis's husband was asked the following questions:

Q: Mr. Francis, you were talking about September of 1993. It's true isn't it, that Ms. Francis had some problems with her kid during that time period, with her son?

A: Nothing of significance and nothing major.

Q: Nothing of significance that would have caused her to be distressed as a mother?

A: Normal parenting of teen-agers.

Q: You're saying that whatever happened with her child didn't bother her one bit?

A: Well, I think it required a lot of attention, a little bothersome, but not—not anything other than normal parenting.

Dow's counsel then asked to approach the bench. Dow's counsel said he knew this line of questioning was the subject of a motion in limine,[7] but he wanted to test the witness's veracity to the extent the witness might be discounting a particular problem and the jury was entitled to know what "the issue was." Francis's counsel argued that Francis's husband did not open the door to further questions when, in response to Dow's question, Francis's husband admitted Francis was bothered by the incident about her son and it required a lot of her attention. The trial court determined that Francis's husband had opened the door by telling the jury "it" was not a serious problem and allowed Dow to continue its questioning of Francis's husband, but not to discuss any criminal proceedings.

■ On appeal, Francis complains this testimony should not have been allowed because it was irrelevant and prejudicial. At trial, Francis made three objections to Dow's line of questioning: (1) Dow "opened the door," not Francis; (2) Dow's questions were "improper"; and (3) Dow's use of the phrase "controlled substance" suggested something worse than what actually happened. Francis's complaint on appeal does not comport with the objections she made at trial. An objection on appeal that does not comport with the objection raised at trial presents nothing for review. *F.D.I.C. v. Golden Imports, Inc.,* 859 S.W.2d 635, 641 (Tex.App.—Houston [1st Dist.] 1993, no writ).

7. The record does not contain a copy of the motion in limine or the trial court's ruling, if any, on the motion.

## C. Mental anguish

Francis contends the trial court erred by excluding testimony from her husband, a psychologist, and a friend about her mental anguish because such testimony was not offered as proof of Dow's actions, but rather as proof of her mental state.

Francis's husband, the psychologist, and the friend testified about Francis's mental anguish and emotional distress. The trial court did not allow portions of their testimony based on Dow's hearsay objections. Francis contends the trial court denied her the means of connecting her work problems with the cause of her mental anguish. Francis argues the testimony was not hearsay because the testimony was not offered to prove the truth of the matter asserted, but to explain why she was upset.

Dow objected each time these witnesses attempted to testify about what someone else told them. The witnesses were not prevented from testifying about what they personally observed about Francis's mental anguish. We conclude that the trial court's exclusion of this testimony, even if error, did not constitute reversible error, because the substance of the excluded statements was placed before the jury by other testimony.

## D. Judicial admission

Francis contends the trial court erred by excluding Dow's response to a pretrial motion to compel because Dow's response was a judicial admission.

In response to the motion to compel, Dow's counsel said, "Dow does not rely on Plaintiff's attendance and tardiness problems as a defense to her claim of discrimination." The trial court excluded this statement from evidence during trial. Francis contends this statement contra-

dicted Dow's position at trial that she had an attendance problem. During a discussion about the statement, Dow's counsel explained that its statement went to Francis's discrimination claim, not to her retaliation claim. Therefore, Dow argued, its statement was not a waiver of its defense to Francis's retaliation claim. The trial court excluded the statement, noting that the jury would not have the benefit of counsels' disagreement about documents sought to be produced in the motion to compel. We agree with Dow.

A judicial admission is a formal waiver of proof usually found in pleadings or the stipulations of the parties. *Mendoza v. Fidelity & Guar. Ins. Underwriters, Inc.*, 606 S.W.2d 692, 694 (Tex.1980). A judicial admission is conclusive against the party making it; it relieves the opposing party's burden of proving the admitted fact and bars the admitting party from disputing it. *Id.* Because Dow's statement was not related to its defense of Francis's retaliation claim, the trial court did not abuse its discretion in excluding the statement.

## E. Income and benefits paid to male supply managers

Francis contends the trial court refused to permit comparisons between her and May and Savage regarding their income and benefits. Francis argues this information was critical to computing her economic damages. Francis mischaracterizes the trial court's ruling.

The trial court did not allow Francis's expert to compare Francis with May and Savage for two reasons. First, the expert could not testify about Francis's damages based on comparisons to specific individuals about which he had no personal knowledge, and second, Dow did not receive the expert's report on his comparisons to May and Savage in a timely manner. The trial

court ruled Francis was entitled to present evidence of her damages based on what her salary would have been at a particular point level or within a particular range. The trial court did not abuse its discretion in excluding the comparisons to May and Savage.

### F. Date lawsuit was filed

Francis contends the trial court improperly prevented her from telling the jury when she filed her lawsuit. Dow asserts that, although the trial court excluded evidence of the date at one point in trial, the date came in later without objection. Dow is correct. Francis's counsel asked McComb, "In August of 1995, a couple of months after this lawsuit was served on Mr. Hegyesi, isn't it true you had a conversation with Hegyesi about Renee Francis?" Francis's complaint on appeal has no merit because the date of the lawsuit was admitted into evidence through later testimony.

### G. The "Data Analyst" Defense

Francis contends the only evidence that she was a data analyst came from the testimony of Hegyesi and other witnesses brought in to bolster Hegyesi's testimony. Francis argues that the testimony of these other witnesses was inadmissible hearsay. Dow's position at trial was that Francis was a data analyst and not a supply manager. We agree with Francis.

Dow attempted to bolster Hegyesi's testimony that Francis was a data analyst with the testimony of various other witnesses. However, each of these witnesses based their testimony on what they had been told by Hegyesi. None of these witnesses admitted to having direct, personal knowledge of Francis's title or function within the Strategic Center.

As a general rule, an out-of-court statement offered for the purpose of proving the truth of the statement is inadmissible hearsay. Tex.R.Evid. 801(d), 802. As the proponent of the hearsay, Dow had the burden of showing that the testimony fit within an exception to the general rule. *See Skillern & Sons, Inc. v. Rosen*, 359 S.W.2d 298, 301 (Tex.1962). Dow did not meet its burden at trial and made no attempt to meet its burden on appeal. Because the testimony of the witnesses other than Hegyesi was offered for the sole purpose of proving the truth of the matter asserted (that Francis was a data analyst, not a supply manager), their testimony amounted to inadmissible hearsay.

The trial court abused its discretion by overruling Francis's hearsay objections to any witness, other than Hegyesi, who testified that Francis was a data analyst.

### H. Hegyesi's personnel file

Francis contends the trial court erred by excluding from evidence a copy of Hegyesi's personnel file because the file was relevant to her cause of action against Dow.

Outside the jury's presence, Francis's counsel offered Hegyesi's personnel file and confidential resume. Dow objected. Francis's counsel responded that "it had some information in there that I will use likely as impeachment, and I will wait until I get to that time." The trial court sustained the objection, but said the documents could be offered later for impeachment. When Francis's counsel later attempted to introduce the documents to show that Hegyesi himself had attendance and tardiness problems, the trial court sustained Dow's objection.

Dow contended at trial that Francis had a "performance problem" in that she was late for meetings and her attendance in the office was inconsistent. Francis ar-

gued this contention was a pretext for discriminating against her and for retaliating against her for filing the EEOC claim. To counter Dow's allegations, Francis attempted to offer company records showing Hegyesi had been late for meetings and had been criticized for it and one of his performance goals was to be more prompt.

Because evidence of an employee's "performance problems" related to advancement and compensation within the company was relevant to Francis's discrimination and retaliation claims, we hold that the trial court abused its discretion by not admitting Hegyesi's personnel file into evidence.

### I. Testimony about Francis's personnel records

■ Francis contends the trial court erred by admitting into evidence testimony that contradicted documents showing her job title to be that of supply manager because the testimony was inadmissible hearsay.

Two exhibits showing Francis's title as supply manager were introduced into evidence. Preston Johnson, global director of human resources for Dow's business services, testified that his assistant entered Francis's title as supply manager into the system by mistake. Francis's counsel objected to this statement as hearsay, and the trial court overruled the objection. Johnson's assistant did not testify at trial.

Johnson did not admit to having direct, personal knowledge of how or why Francis's title of supply manager was entered into Dow's personnel records; instead, he testified about what someone else said or did. Dow did not meet its burden of showing Johnson's testimony fit within an exception to the general rule against the admissibility of hearsay. *See Skillern & Sons,* 359 S.W.2d at 301. Because Johnson's testimony was offered for the sole purpose of proving the truth of the matter asserted (that Francis's supply manager title was a clerical mistake), his testimony amounted to inadmissible hearsay. The trial court abused its discretion by admitting Johnson's testimony.

### J. Job points

■ Francis contends the trial court erred by excluding from evidence deposition testimony about job points because such testimony was relevant to her cause of action against Dow.

Francis's counsel attempted to admit the following deposition testimony of Lawrence Washington, who was Dow's global human resources director:

Q. Assume with me that Mr. Gerardo was not a general manager, okay?

A. Okay.

Q. Assume with me that Mr. Weymouth [May's former supervisor] was a general manager, okay?

A. Okay.

Q. In a business sense, was Mr. Weymouth, in that hypothetical, higher in management that [sic] Mr. Gerardo?

A. I can't tell you.

Q. What would you need to know to be able to make that determination?

A. Their job points.

The trial court sustained Dow's objection to this testimony as irrelevant.

An important premise of Francis's case was that "job points," and not "personal points," determined the importance of an employee's job and controlled an employee's compensation. Therefore, Washington's answer to a hypothetical question about job points was relevant to Francis's discrimination and retaliation claims. *See* Tex.R.Evid. 401. The trial court abused its discretion in excluding this testimony.

### K. Exclusion of Jim Newell's testimony

Francis contends the trial court erred by excluding Jim Newell's testimony about Hegyesi because such testimony provided relevant background evidence of Hegyesi's discriminatory attitude towards women.

Francis attempted to elicit testimony from Newell, a retired Dow employee, about Hegyesi's version of the "truth" changing from day-to-day and about Hegyesi's derogatory remarks about and treatment of women in the late 1980's. Francis argues this testimony was relevant as background evidence of Hegyesi's discriminatory attitude toward women. At trial, Dow objected that Hegyesi's alleged remarks or behavior in 1986 and 1987 was not relevant to his behavior in 1993 and was inadmissible reputation evidence under the guise of Newell's opinion. The trial court sustained the objections.

Newell's testimony was not offered for the purpose of showing that Hegyesi acted toward Francis in conformity with his past alleged conduct. Rather, Newell's testimony was offered to illuminate Hegyesi's current conduct which, viewed in isolation, might not indicate discriminatory intent. See United Air Lines, Inc. v. Evans, 431 U.S. 553, 558, 97 S.Ct. 1885, 1889, 52 L.Ed.2d 571 (1977) (time-barred conduct may provide relevant background evidence in a proceeding in which the status of a current practice is at issue). Therefore, the trial court abused its discretion by excluding Newell's testimony.

### L. Trial Court Bias

Francis cites numerous incidents of alleged judicial misconduct. Francis did not make a timely objection complaining of the trial judge's comments or conduct, nor did she request a curative instruction or mistrial. Francis argues objections would have only made matters worse; therefore, she did not waive her complaints on appeal. We agree.

The judge is responsible for the general conduct and management of the trial. Metzger v. Sebek, 892 S.W.2d 20, 38 (Tex.App.—Houston [1st Dist.] 1994, writ denied). In fulfilling this responsibility, the trial court has discretion in expressing itself while managing the trial. Id. The judge may properly intervene in the proceedings to maintain control and promote expedition. Id. The judge should, however, refrain from verbally confronting or displaying displeasure toward counsel, particularly in the presence of the jury. Id. During trial, the judge should not make unnecessary comments or remarks that may result in prejudice to a litigant. Id.

An appellate court should reverse a judgment because of improper comments or conduct on the part of the trial court only if the comments are prejudicial. Id. at 39. We make our determination of whether the error probably caused the rendition of an improper judgment by examining the record as a whole. Id.

Here, the record reveals that some of the trial court's comments were not so much directed toward Francis, her attorney, or the merits of her case, as they were to the trial court's desire to expedite the proceedings. However, there are many instances of conduct by the trial court that we do not condone and which cause us concern over whether there was prejudice towards Francis.

The cumulative effect of the trial court's abuse of its discretion with regard to its evidentiary rulings and its bias against the appellant resulted in the rendition of an improper judgment and constitutes reversible error.

We sustain points of error three, four, and five.

## V. Damages

The jury was asked a single question about damages: "What sum of money, if any, if paid now in cash, would fairly and reasonably compensate [Francis] for her damages, if any, that resulted from [Dow's] conduct." The jury answered "–0–" to all elements.

### A. Damages under retaliation claim

In point of error six, Francis asserts the evidence is legally and factually insufficient to support the jury's award of zero damages, even though the jury found Dow liable for retaliation.

To recover for lost income, the amount of the loss must be shown by competent evidence based upon reasonable certainty. *See White v. Southwestern Bell Tel. Co.*, 651 S.W.2d 260, 262 (Tex.1983) (lost profits); *Allied Vista, Inc. v. Holt*, 987 S.W.2d 138, 142 (Tex.App.—Houston [14th Dist.] 1999, pet. denied) (lost salary). Opinions or estimates of loss can be competent evidence to support a recovery for lost income if based upon objective facts, figures, or data from which the amount of lost income can be ascertained. *Holt Atherton Indus., Inc. v. Heine*, 835 S.W.2d 80, 84 (Tex.1992). If the injured party produces the best evidence of her damages available, and if such evidence provides a reasonable basis for determining her loss, she is entitled to a recovery even if the exact amount of the damages cannot be ascertained. *AmSav Group, Inc. v. American Sav. & Loan Ass'n*, 796 S.W.2d 482, 489 (Tex.App.—Houston [14th Dist.] 1990, writ denied).

Francis filed her EEOC claim on February 28, 1994. At trial, she contended her salary increase scheduled for April 1994 was canceled because she filed the claim.

Therefore, Francis concludes on appeal, the amount of the raise (plus other forms of income such as bonuses and fringe benefits) from April 1994 to the date of trial should have been awarded as lost income under her retaliation claim.

Francis's economic expert, Donald Huddle, assumed Francis would have been at 238 points had Hegyesi fulfilled his alleged promise to make her a supply manager. Huddle also assumed that Francis eventually would have been promoted to 315 points, and he assumed normal raises over the next 14 years. He calculated Francis's future economic losses to be $1,677,044. Other witnesses testified about Francis's emotional distress.

Francis's evidence provided a reasonable basis for determining her losses; therefore, she was entitled to a recovery on her retaliation claim. We hold that the evidence was both legally and factually insufficient to support the jury's award of no damages.

We sustain point of error six.

### B. Punitive damages

In point of error seven, Francis asserts the evidence is legally and factually insufficient to support the jury's award of zero punitive damages under Francis's discrimination claim. The jury was asked whether Dow discriminated against Francis with malice or reckless indifference to her right to be free from discrimination, and it answered, "No."

Because we have determined that the cumulative effect of the trial court's abuse of its discretion with regard to its evidentiary rulings and its bias against the appellant resulted in the rendition of an improper judgment and constitutes reversible error, we do not reach the merits of point of error seven.

We reverse the trial court's grant of summary judgment in favor of the defendants on Francis's fraud claim. We reverse the judgment of the trial court in all other respects. We remand to the trial court for further proceedings.

