**Don NELSON, Appellant,**

v.

**AMERICAN NATIONAL BANK OF GONZALES, William Hyman and Tim Miller, Appellees.**

**No. 13–95–003–CV.**

Court of Appeals of Texas, Corpus Christi.

April 4, 1996.

Donald L. Busby, Temple, for appellant.

Houston Munson, Gonzales, for appellees.

Before SEERDEN, C.J., and YAÑEZ and CHAVEZ, JJ.

## OPINION

CHAVEZ, Justice.

Appellant, Don Nelson, brought suit against appellees, American National Bank of Gonzales (the Bank), William Hyman, a vice president and loan officer of the Bank, and Tim Miller, a ranch director, for civil conspiracy and conversion of 273 head of cattle. The Bank filed a cross-action against appellant alleging conversion.

After a jury trial, the court directed a verdict in favor of appellees on the basis of the statute of limitations. In addition, the court directed a partial verdict in favor of the Bank on its cross-action. Appellant appeals by four points of error. The Bank appeals by one point of error. We affirm the trial court's directed verdict in favor of appellees that appellant take nothing, and reverse and remand the trial court's directed verdict in favor of appellee Bank's cross-action.

In August 1990, appellant purchased 273 head of cattle from the Delbert Sugg Cattle Company (the Cattle Company), a corporate entity who was not made a party to this lawsuit. The Cattle Company placed the cattle under the care and custody of appellee Tim Miller to be pre-conditioned until appellant was ready for delivery of the livestock.

Prior to appellant's purchase, from 1988 to 1990, the Bank loaned the Cattle Company $250,000.00 for operating expenses. The Bank retained a lien in the Cattle Company's assets as collateral. The security agreement specifically named livestock as an included asset.

In September 1990, the Bank filed an application for the appointment of a receiver

upon the Cattle Company's default on its loans. A district court granted the Bank's application. In October 1990, a receiver took possession of the Cattle Company to secure all cattle, livestock, contracts, notes, drafts, and monies in its possession. Appellant's cattle were among the assets seized. Eventually, appellant recovered all but thirty-five head of his cattle.

Appellant filed suit against the Bank, William Hyman, the Bank's vice-president who signed the documents for the appointment of the receiver, and Tim Miller, the ranch director who had possession of the cattle at the time of seizure. Appellant's petition alleged that appellees conspired to convert appellant's cattle by obtaining a wrongful receivership and exercising control over appellant's livestock.

In turn, appellee Bank filed a cross-claim against appellant alleging conversion of the cattle in which it had a valid priority lien. The trial court directed a verdict in favor of appellees on appellant's conversion and conspiracy claims and granted the Bank a directed verdict on its cross-claim in the amount of $23,375.00.

■ Appellant's first point of error contends that the trial court erred in granting appellees' motions to transfer venue. Appellant originally filed suit in Lampasas County, Texas, contending that venue was proper because 1) appellee Tim Miller was a resident of Lampasas County; 2) the main office of the Cattle Company was located in Lampasas County; and 3) a portion of the cattle owned by appellant was located in Lampasas County at the time of the seizure.

Appellees' motions to transfer venue asserted that Lampasas County was not a county of proper venue because neither appellees nor appellant resided in Lampasas County, nor did any cause of action accrue in Lampasas County. After conducting a hearing on the motion to transfer venue, the trial court ordered that venue be transferred to Gonzales County, Texas.

■ On appeal, we must conduct an independent review of the entire record to determine whether venue was proper in the ultimate county of suit. TEX.CIV.PRAC. &

REM.CODE ANN. § 15.064(b) (Vernon 1986); *Ruiz v. Conoco, Inc.,* 868 S.W.2d 752, 758 (Tex.1993). The review should be conducted like any other review of the trial court's factfindings and legal rulings, except that the evidence need not be reviewed for factual sufficiency. *Ruiz,* 868 S.W.2d at 758.

■ If there is any probative evidence in the entire record, including trial on the merits, that venue was proper in the county where judgment was rendered, the appellate court must uphold the trial court's determination. *Id.* If there is no such evidence, the judgment must be reversed and the case remanded to the trial court. *Id.*

Thus, the issue is whether there is any probative evidence in the record to support the trial court's determination that venue was proper in Gonzales County. However, the statement of facts from the venue hearing is not included in the appellate record. In the absence of a statement of facts, we must presume that the evidence supports the finding. *Guthrie v. National Homes Corp.,* 394 S.W.2d 494, 495 (Tex.1965).

With this presumption in mind, appellees, therefore, proved that venue was proper in Gonzales County. Since venue was proper, we uphold the trial court's determination. Appellant's first point of error is overruled.

■ Appellant's second point of error alleges that the trial court erred in directing a verdict for appellees. A directed or instructed verdict is proper under Texas Rule of Civil Procedure 301 when 1) a specifically indicated defect in the opponent's pleadings makes it insufficient to support a judgment; 2) the evidence conclusively proves a fact that establishes a party's right to judgment as a matter of law; or 3) the evidence offered on a cause of action is insufficient to raise an issue of fact. *Kelly v. Diocese of Corpus Christi,* 832 S.W.2d 88, 90–91 (Tex.App.—Corpus Christi 1992, writ dism'd w.o.j.); *Rowland v. City of Corpus Christi,* 620 S.W.2d 930, 932–33 (Tex.Civ.App.—Corpus Christi 1981, writ ref'd n.r.e.).

■ In reviewing the granting of a directed verdict by the trial court on an evidentiary basis, the reviewing court will de-

termine whether there is any evidence of probative force to raise fact issues on the material questions presented. *Collora v. Navarro*, 574 S.W.2d 65, 68 (Tex.1978). The court considers all of the evidence in a light most favorable to the party against whom the verdict was instructed and disregards all contrary evidence and inferences; thus, the losing party receives the benefit of all reasonable inferences created by the evidence. *Trenholm v. Ratcliff*, 646 S.W.2d 927, 931 (Tex.1983).

 If there is any conflicting evidence of probative value on any theory of recovery, the issue is for the jury, and an instructed verdict is improper. *White v. Southwestern Bell Tel. Co.*, 651 S.W.2d 260, 262 (Tex.1983). When no evidence of probative force on an ultimate fact element exists, or when the probative force of slight testimony is so weak that only a mere surmise or suspicion is raised as to the existence of essential facts, the trial court has the duty to instruct the verdict. *Guynn v. Corpus Christi Bank & Trust*, 589 S.W.2d 764, 770 (Tex.Civ.App.— Corpus Christi 1979, writ dism'd). The reviewing court may affirm a directed verdict even if the trial court's rationale for granting the directed verdict is erroneous, provided it can be supported on another basis. *Kelly*, 832 S.W.2d at 90.

 Appellees pleaded limitations in defense of appellant's conversion and conspiracy causes of action. The statute of limitations for causes of action in conversion of personal property is two years. Tex.Civ. Prac. & Rem.Code Ann. § 16.003(a) (Vernon Supp.1996); *Hansler v. Mainka*, 807 S.W.2d 3, 5 (Tex.App.—Corpus Christi 1991, no writ).

On appeal, appellant refers this court to *Reese v. Parker*, 742 S.W.2d 793 (Tex.App.— Houston [14th Dist.] 1987, no writ), for the proposition that circumstances may occur, so-called "lawful acts," in which a defendant's conduct will not form the basis of an immediate suit by a plaintiff. *Id.* at 797. A cause of action will then accrue only when the plaintiff's legally protected interest has been invaded. *Id.*

Appellant contends that his cause of action did not accrue until the receiver's accounting was approved and the receiver was discharged. Specifically, appellant alleges that because the agreed order in a separate proceeding, which approved the receiver's accounting and discharged the receiver, was not ordered until July 12, 1993, no cause of action accrued on a wrongful appointment of a receiver until that date. Appellant adds that Texas courts recognize causes of action for wrongful appointment of a receiver. *See Butler v. Thomasson*, 256 S.W.2d 936 (Tex. Civ.App.—Eastland 1953, no writ). However, appellant's original petition asserted no cause of action for wrongful appointment of a receiver. Instead, the two causes of action alleged were conversion and conspiracy.

 We find the better rule to apply was annunciated by this Court in *Hofland v. Elgin–Butler Brick Co.*, 834 S.W.2d 409 (Tex. App.—Corpus Christi 1992, no writ), when determining when a cause of action in conversion accrues. *Hofland* provides that when unequivocal acts of conversion have occurred, or when possession is initially lawful and there is no demand and unqualified refusal, the cause of action accrues upon the discovery of facts supporting the cause of action, or upon demand and refusal, whichever occurs first. *Id.* at 414.

Appellant discovered that his cattle had been removed, an act inconsistent with his ownership rights, on October 2, 1990. The discovery of this fact supported appellant's cause of action in October 1990. Yet, appellant did not file this suit until three years later on October 26, 1993. Accordingly, the two-year statute of limitations bars appellant's suit.

 Likewise, the statute of limitations for civil conspiracy is two years. Tex. Civ.Prac. & Rem.Code Ann. § 16.003(a) (Vernon 1986); *Cathey v. First City Bank of Aransas Pass*, 758 S.W.2d 818, 822 (Tex. App.—Corpus Christi 1988, writ denied). The two-year statute begins to run at each invasion of a plaintiff's interest causing loss and damage in a conspiracy case. Thus, any act committed more than two years prior to the filing of a conspiracy action would be

barred by limitations and not recoverable at trial. *Cathey,* 758 S.W.2d at 822.

We hold that appellant's conspiracy cause of action accrued on October 2, 1990, the date appellant's interest was allegedly invaded due to a conspiracy and the date that appellant became aware of the invasion. The trial court properly barred appellant's claims on the basis of limitations. Thus, appellant's second point of error is overruled.

■ Appellant's third point of error contends that the trial court erred in granting the Bank's motion for a directed verdict on the Bank's cross-action against appellant. The Bank filed a cross-action against appellant alleging that its U.C.C. filing constituted priority over possession of the livestock and sought damages for the value of the livestock which were retaken by appellant. The Bank claimed that appellant's repossession of the cattle amounted to a conversion for appellant's own use and benefit.

The trial court granted a partial directed verdict for the Bank on fifty-five of the two hundred and seventy-three head of cattle because it found that appellant had failed to establish that fifty-five head of cattle purchased by appellant were ever subject to the control of the Bank. The court also found that the Bank did not waive its lien on those livestock because that issue was never in controversy. The partial directed verdict awarded the Bank $23,375.00.

Appellant's argument is predicated on section 9.307(a) of the Business and Commerce Code which states:

(a) [A] buyer in the ordinary course of business (Subdivision (9) of Section 1.201) *other than a person buying farm products from a person engaged in farm operations* takes free of a security interest created by his seller even though the security interest is perfected and even though the buyer knows of its existence.

TEX.BUS. & COM.CODE ANN. § 9.307(a) (Vernon 1991) (emphasis added).

Section 9.109(3) defines farm products as goods that are crops, livestock, or supplies used or produced in farming operations in the possession of a debtor engaged in raising, fattening, grazing, or other farming opera-

tions. TEX.BUS. & COM.CODE ANN. § 9.109(3) (Vernon 1991).

The trial court determined that appellant was not a buyer in the ordinary course of business because the cattle constituted farm products sold by an entity which engaged in farming operations. Thus, the court found that appellant did not purchase the cattle free of the Bank's security interest.

In 1985, the United States Congress enacted legislation to provide protection for purchasers of farm products from secured creditors of the seller. *See* Food Security Act of 1985, 7 U.S.C. § 1631(a) (1988). The explicit purpose of the federal legislation was to preempt certain state laws, including section 9.307(a). Op.Tex. Att'y Gen. No. JM–657 (1987).

Subsections (a) and (b) of § 1631 of the Food Security Act provide:

**(a) Congressional findings**

Congress finds that—

(1) certain State laws permit a secured lender to enforce liens against a purchaser of farm products even if the purchaser does not know that the sale of the products violates the lender's security interest in the products, lacks any practical method for discovering the existence of the security interest, and has no reasonable means to ensure that the seller uses the sales proceeds to repay the lender;

(2) these laws subject the purchaser of farm products to double payment for the products, once at the time of purchase, and again when the seller fails to repay the lender;

(3) the exposure of purchasers of farm products to double payment inhibits free competition in the market for farm products; and

(4) this exposure constitutes a burden on and an obstruction to interstate commerce in farm products.

**(b) Declaration of purpose**

The purpose of this section is to remove such burden on and obstruction to interstate commerce in farm products.

Food Security Act of 1985, 7 U.S.C. § 1631(a) & (b) (1988).

The Act further provides that a buyer who in the ordinary course of business buys a farm product from a seller engaged in farm-

ing operations shall take free of a security interest created by the seller, even though the security interest is perfected and the buyer knows of the existence of the interest. Food Security Act of 1985, 7 U.S.C. § 1631(d) (1988).

The Act, however, contains exceptions and in certain circumstances allows a secured creditor in farm products to protect its interest. A buyer of farm products takes subject to a security interest created by the seller 1) if within one year before the sale of the farm products, the buyer receives written notice of the security interest from the secured party or the seller, or 2) if the products were produced in a state that has a central filing system as defined in section 1631[1] and the buyer had constructive notice of the security interest as provided in the Act. Food Security Act of 1985, 7 U.S.C. § 1631(e) (1988).

This case presents neither exception. The Bank did not provide appellant with advance notice of its secured interest prior to appellant's purchase of the cattle, and the state of Texas does not have a central filing system as defined in section 1631.

■ A state law that conflicts with federal law is without effect. *Cipollone v. Liggett Group, Inc.*, 505 U.S. 504, 516, 112 S.Ct. 2608, 2617, 120 L.Ed.2d 407 (1992). Thus, any interest the Bank had in appellant's cattle under section 9.307(a)'s farming exception was unenforceable. The Bank's interest would only be superior to appellant's ownership interest if appellant were not found to be a "buyer in the ordinary course of business."

■ Since the trial court failed to consider the Food Security Act and its effect on section 9.307(a), a fact question remained for the jury whether appellant was a "buyer in the ordinary course of business" who could take free of the Bank's security interest. Thus, the trial court's directed verdict in favor of the Bank was improper. Accordingly, appellant's third point of error is sustained.

Appellant's fourth point of error alleges that the trial court erred in excluding opinion evidence. Because appellant's suit was barred by the statute of limitations, as discussed in appellant's second point of error, we need not address this point. Tex. R.App.P. 90.

Appellee Bank's cross-point of error alleges that the trial court erred in failing to direct a verdict for the value of an additional 181 head of cattle subject to its security interest, over and above the fifty-five head that were the subject of the partial directed verdict. Pursuant to the discussion above in appellant's third point of error, we find that a question of fact still remains whether appellant was a "buyer in the ordinary course of business" who could take free of the Bank's security interest in the cattle. Thus, the Bank was not entitled to a directed verdict for the value of an additional 181 head of cattle. Appellee's cross-point of error is overruled.

Accordingly, the trial court's judgment directing a verdict in favor of appellees that appellant take nothing is AFFIRMED. The trial court's judgment directing a partial verdict in favor of appellee Bank's cross-action is REVERSED and REMANDED.

---

1. Central filing system is defined as "a system for filing effective financing statements or notice of such financing statements on a statewide basis and which has been certified by the Secretary of the United States Department of Agriculture...." Food Security Act, 7 U.S.C. § 1631(c)(2) (1988).