**Daniza S. VILLARREAL, Appellant,**

v.

**ART INSTITUTE OF HOUSTON, INC., Appellee.**

**No. 13–99–511–CV.**

Court of Appeals of Texas, Corpus Christi.

May 11, 2000.

---

David B. Black, Houston, for Appellant.

Malcolm Deon Dishongh, Murray Fogler, McDade, Fogler, Maines & Lohse, Houston, for Appellee.

Before Chief Justice SEERDEN and Justices DORSEY and YAÑEZ.

## OPINION

DORSEY, Justice.

Daniza Villarreal enrolled in the photography program at the Art Institute of Houston, Inc. ("The Art Institute"). The Art Institute is a technical college which offers various degree programs, but does not offer transferrable college credit courses. Villarreal contends that its representatives made numerous false representations to her regarding the program, the school, and the costs. She took out guaranteed student loans in order to pay for the program. She did not complete the program, and did not repay the loans as required. She sued The Art Institute of Houston, Inc. for fraud and breach of contract.

Her case was tried to a jury. After the close of Villarreal's case, the trial court directed verdict for The Art Institute on the breach of contract claim. The jury found for The Art Institute on the fraud claims, and a take nothing judgment was entered against Villarreal. She appeals this judgment, contending that the trial court erred in directing verdict against her on the contract claims, and that the evidence was legally and factually insufficient to support the jury's finding on the fraud claims.

## BREACH OF CONTRACT

We hold the trial court did not err in directing verdict against Villarreal on her breach of contract claims. Villarreal contends that her contract with The Art Institute was partly written and partly oral, and alleges that The Art Institute breached the contract in three ways:

(1) failing to provide her with unlimited use of its photography department facilities and equipment;

(2) failing to provide her with college credits that could be transferred to another college or university; and

(3) failing to provide her with an associate's degree.

Conversely, The Art Institute contends that its contract with Villarreal—in its entirety—was embodied in one document, the Enrollment Agreement. The Art Institute argues that it did not breach the express terms of that contract, and that parol evidence is not admissible to alter its terms. It appears the trial court granted directed verdict on that basis.

*Standard of Review for Directed Verdict*

A directed verdict is appropriate when reasonable minds can draw only one conclusion from the evidence. *Collora v. Navarro,* 574 S.W.2d 65, 68 (Tex.1978); *Villegas v. Griffin Industries,* 975 S.W.2d 745, 748–49 (Tex.App.—Corpus Christi 1998, no writ). Where the plaintiff fails to present evidence in support of a fact es-

sential to her right to recover or where a defense against the plaintiff's cause of action is conclusively proved or admitted, a directed verdict for the defendant is proper. *Villegas,* 975 S.W.2d at 749. On review, we examine the evidence in the light most favorable to the party against whom the verdict was rendered and disregard all contrary evidence and inferences. *Qantel Bus. Sys. v. Custom Controls,* 761 S.W.2d 302, 303–04 (Tex.1988); *Villegas,* 975 S.W.2d at 749. When reasonable minds may differ as to the truth of controlling facts, the issue must go to the jury. *Villegas,* 975 S.W.2d at 749. When no evidence of probative force on an ultimate fact element exists, or when the probative force of slight testimony is so weak that only a mere surmise or suspicion is raised as to the existence of essential facts, the trial court has the duty to instruct the verdict. *Nelson v. American Nat. Bank of Gonzales,* 921 S.W.2d 411, 415 (Tex.App.—Corpus Christi 1996, no writ). The reviewing court may affirm a directed verdict even if the trial court's rationale for granting the directed verdict is erroneous, provided it can be supported on another basis. *Kelly v. Diocese of Corpus Christi,* 832 S.W.2d 88, 90 (Tex.App.—Corpus Christi 1992, writ dism'd w.o.j.).

## APPLICABILITY OF THE PAROL EVIDENCE RULE

Before deciding the merits of this case, we first address The Art Institute's argument regarding the parol evidence rule. The trial court appears to have granted directed verdict on the theory that the entire agreement between The Art Institute and Villarreal was contained in the Enrollment Agreement, a written document, and that parol evidence was not admissible to alter the terms of the unambiguous contract.

Essentially, the same argument was made in *Texas Military College v. Taylor,* 275 S.W. 1089, 1091 (Tex.Civ.App.—Beaumont 1925, no writ). In that case, a parent who signed a promissory note to pay the school's tuition contended that the school entered into a special contract with him that was different from the terms contained in the catalogue that his tuition notes would be forgiven if his asthmatic son were unable to complete the semester due to his health. *Id.* The school argued that its catalogue constituted a binding written contract that could not be questioned by verbal testimony. *Id.* While the court agreed with that general proposition so long as entrance is had under the terms of the contract, *Vidor v. Peacock,* 145 S.W. 672, (Tex.Civ.App.—San Antonio 1912); *Peirce v. Peacock Military College* 220 S.W. 191 (Tex.Civ.App.—San Antonio 1920); *Aynesworth v. Peacock Military College,* 225 S.W. 866 (Tex.Civ.App.—Amarillo 1920); *Peacock Military College v. Hughes,* 225 S.W. 221 (Tex.Civ.App.—San Antonio 1920); *Peacock Military College v. Scroggins,* 223 S.W. 232 (Tex.Civ.App.—San Antonio 1920), it held that the school could also enter into a special verbal contract under which entrance could be had, and in that situation, evidence of the verbal contract would certainly be admissible to show its terms. *Id.*

We do not believe that the entire agreement between Villarreal and The Art Institute was embodied in the Enrollment Agreement. That document did not purport to contain every binding agreement between Villarreal and The Art Institute. It contained general terms regarding the amount of tuition, the policy for raising tuition, a notice that the student had the right to cancel the transaction prior to the expiration of five days from date of signing, a list of supplies, and other general policies of the school, such as a note that the school reserves the right to cancel enrollment of a student who does not appear to be making satisfactory progress. Notably, the document did not include a clause stating that it embodied all agreements between the parties.

Under the parol evidence rule, extrinsic evidence is ordinarily not admissible to add to, vary, or contradict the terms

of a written contract that is clear on its face. *National Union Fire Ins. Co. v.. CBI Indus., Inc.*, 907 S.W.2d 517, 521 (Tex.1995). However, we find that while the promises contained in the enrollment agreement may be clear, it is not clear that those are the only promises between the parties, and the plaintiff testified that they were not. Rather, we find that the entire agreement was made partly through written documents, partly through oral representations, and partly through implicit promises ascertained by the parties' actions and surrounding circumstances.

■ Directed verdict was therefore not appropriate on the grounds that no parol evidence was admissible to vary the terms of the written contract. However, we find that directed verdict was appropriate on grounds that Villarreal did not present any evidence that the contract contained the terms she alleges were breached by The Art Institute. *See Kelly*, 832 S.W.2d at 90 (directed verdict can be upheld on appeal on different grounds than those upon which the trial court granted directed verdict).

## THE NATURE OF A CONTRACT BETWEEN A SCHOOL AND ITS STUDENTS

A few Texas courts have addressed the issue of whether a contract exists between a private educational institution and its students. *See e.g. Southwell v. University of Incarnate Word*, 974 S.W.2d 351, 356 (Tex.App.—San Antonio 1998, pet. denied); *Eiland v. Wolf*, 764 S.W.2d 827, 838 (Tex. App.—Houston [1st Dist.] 1989, writ denied) (holding that school catalogue was not enforceable contract when it contained express disclaimer that it did not constitute an irrevocable contract between any student and the school); *University of Texas Health Science Center at Houston v. Babb*, 646 S.W.2d 502, 506 (Tex.App.— Houston [1st Dist.] 1982, no writ) (holding that a university's catalogue constitutes a written contract between the educational institution and the patron, where entrance is had under its terms); *Taylor*, 275 S.W. at 1090–1091; (holding that a special verbal contract between a school and parent of student may exist in derogation of the written terms of the catalogue, which constitutes a written contract between the educational institution and the patron, when entrance is had under its terms); *Vidor*, 145 S.W. 672 (school catalogue sets forth terms of contract between patrons and school). The First District Court in Houston has stated that "the relationship between a private school and its student has by definition primarily a contractual basis." *Eiland*, 764 S.W.2d at 837–38. And recently, the San Antonio court stated that "[w]here a private college or university impliedly agrees to provide educational opportunity and confer the appropriate degree in consideration for a student's agreement to successfully complete degree requirements, abide by university guidelines, and pay tuition, a contract exists." *Southwell*, 974 S.W.2d at 356.

At a minimum, an implied contract existed between Villarreal and The Art Institute that The Art Institute would provide Villarreal an educational opportunity and confer upon her a degree in photography in consideration for her agreement to successfully complete degree requirement, abide by the school's guidelines, and pay tuition. The other terms of the contract were partly oral and partly written. We confine our inquiry here to whether Villarreal made out her causes of action for breach of contract with regard to the specific terms she alleges were breached in this suit.

While a valid contract did exist between The Art Institute and Villarreal, Villarreal failed to offer any evidence that the terms of that contract required The Art Institute to perform the acts that she complains it failed to perform. Thus, because she has not proven the existence of a valid contract containing the terms upon which she bases her suit, the trial court was correct in directing verdict against Villarreal on her breach of contract claims.

In order for the trial court to have erred in failing to send her breach of contract claims to the jury, Villarreal must have presented enough evidence to raise a fact issue on each element of her three claims of breach. Her three claims are (1) that the Institute failed to provide her with unlimited access to its facilities; (2) that the Institute failed to provide her with an Associate's Degree; and (3) that the Institute failed to provide her with college credit hours that were transferable into a four-year degree program. With regard to each, she must have produced evidence of: (1) the existence of a valid contract binding the Institute to perform the promised act she claims it failed to perform; (2) her performance or tender of performance given as consideration for that particular promise; (3) nonperformance on the part of the Institute; and (4) damages resulting from the breach. *See Garner v. Corpus Christi Nat. Bank,* 944 S.W.2d 469, 476 (Tex.App.—Corpus Christi 1997, writ denied) (reciting the essential elements of a breach of contract action). Each of her claims fails to meet the first element.

The first element in a breach of contract case is that the plaintiff must prove the existence of a valid contract wherein the defendant promised to perform in the manner the plaintiff alleges he failed to perform. The elements of a valid contract are: (1) an offer; (2) an acceptance in strict compliance with the terms of the offer; (3) a meeting of the minds; (4) each party's consent to the terms; and (5) execution and delivery of the contract with the intent that it be mutual and binding. *Copeland v. Alsobrook,* 3 S.W.3d 598, 604 (Tex.App.—San Antonio 1999, pet. denied); *McCulley Fine Arts Gallery, Inc. v. "X" Partners,* 860 S.W.2d 473, 477 (Tex.App.—El Paso 1993, no writ). "The determination of a meeting of the minds, and thus offer and acceptance, is based on the objective standard of what the parties said and did, and not on their subjective state of mind." *Copeland,* 3 S.W.3d at 604. Villarreal produced no evidence to show a valid contract existed requiring The Art Institute to: (1) provide her with unlimited access to its facilities, (2) confer an associate's degree upon her, or (3) provide her with college credits that could be readily transferred to another university or college. Because she has not shown the existence of a valid contract containing those terms, her breach of contract claims must fail as a matter of law. We address each alleged promise, in turn.

## 1. Promise to Provide Unlimited Access to the Institute's Facilities

### A. No evidence of a contract

First, Villarreal failed to offer any evidence that The Art Institute entered into a valid contract to provide her with unlimited access to its facilities. She also failed to offer any evidence that The Art Institute breached that agreement. The only evidence she offered was her own testimony that she was told by an admissions representative that once she received her degree, she would "always" be able to come back and use their equipment. She also testified that one of the teachers at The Art Institute told a story about a student that had gone to school there, became a photographer and after graduating had some problems with her personal equipment. She was able to get the job done by using The Art Institute facilities. The implication, of course, was that all graduates of the photography program would be able to return to the institute to use the facility if necessary.

However, this evidence does not show that a valid contract existed between Villarreal and the Institute requiring the Institute to allow her unlimited use of its facilities. Villarreal does not contend that the Institute made that promise to her in writing, but only alleges that the oral statements referred to above constitute the binding contract upon which she sues. She did not offer any evidence that the Art Institute intended to be bound by that condition, or that unlimited access to the facility was provided as consideration for

her tuition and fees. She did not offer any evidence that there were any conditions on The Art Institute's alleged promise to provide her with unlimited use of its facility. She appears to be arguing that The Art Institute promised her unlimited use, regardless of her academic or enrollment status, and regardless of whether she completed or dropped out of the photography program. Her vague testimony the she was promised she would "always" be able to use the facility does not logically imply that The Art Institute intended to enter a binding contract to allow such use, and we find it insufficient to establish that a valid contract existed that contained that term.

## B. No evidence of a breach

Moreover, Villarreal offered only vague and scant evidence that any such promise was, in fact, breached by The Art Institute. She testified that at a time when she was not enrolled in classes, she went to the school to use the facility and equipment and was told by another student that Jim Estes, the head of the photography department, had said to tell her the next time she came to the school that she was not to use the facility and equipment anymore. Villarreal testified that upon hearing that, she left, and never inquired further about her ability to use the facility or equipment nor did anything to confirm that the message was legitimate. The head of the department testified that he never told anyone to relay that message to Villarreal.

"Some evidence" is that which would enable reasonable and fair-minded people to differ in their conclusions, but creates more than a suspicion or surmise. *Ramirez v. Carreras*, 10 S.W.3d 757, 760 (Tex.App.—Corpus Christi 2000, pet. filed Feb. 23, 2000). We hold that Villarreal did not present any evidence that The Art Institute made and then breached a contract to allow her unlimited use of its facility, and affirm the trial court's granting directed verdict on that basis.

## 2. *Promise to Confer an Associate's Degree*

Similarly, Villarreal failed to support her claim that The Art Institute promised to provide her with an Associate's Degree, rather than an Associate's Degree of Applied Science/Art. (The difference in the two is that an Associate's Degree is typically comprised of credits that will transfer into a four-year degree program at a college or university, whereas an "applied" degree is comprised of credits in a specialty area that will typically not count toward another degree.) The Art Institute's representatives testified at length regarding the differences in an "Associate's Degree of Applied Sciences" (or Art) and an "Associate's Degree," and testified that the applied degree was the only one offered for photography at the Institute.

Villarreal's own testimony failed to establish that The Art Institute contracted to provide her with an Associate's Degree. She testified that she was given the impression that she would be earning an Associate's Degree from The Art Institute, but not that she was specifically told that. She testified that during her initial interview with The Art Institute admissions representative, she told the representative that she planned to go to college, and the representative responded that she would be attending college at The Art Institute, the only difference was that she could complete an associate's degree in two years at The Art Institute versus four years otherwise. She testified that at the time she signed the Enrollment Agreement, she did not know that the "Associate of Applied Science/Art" degree offered by The Art Institute was different from an associate's degree. She was told that after she got her photography degree, she could continue her schooling and get a "master's degree."

However, this claim is in express contradiction of a written agreement between the parties. Villarreal executed a form promulgated by the Texas Education Agency

when she enrolled at The Art Institute. This form ensures that the students receive the information the school is required by law to provide prior to enrollment. It is to be completed by the student prior to enrollment and the completed form maintained by the school in each student's file. This document is initialed fourteen (14) times by Villarreal, and signed and dated by her at the bottom.

It states, in relevant part:

If the school awards credit hours, it has been explained to me that transferability of any credit hours earned at this school may be limited. I have also been provided a list of all known Texas institutions of higher learning and state technical institutions that will accept any or all of the credit hours so earned. If the school has an articulation agreement with an academic college or university, that information has been provided with any limitations....

Villarreal testified that at the time she signed the Enrollment Agreement, she did not know that the "Associate of Applied Science/Art" degree offered by The Art Institute was different from an Associate's degree. She said she was not told that her credit hours at The Art Institute would not transfer to other colleges. She testified that her whole goal was to continue her education beyond the photography course, and if she had known that the hours would not transfer, she would not have taken it.

However, Villarreal did not testify that anyone directly told her that she would receive an Associate's Degree, and not an Associate's of Applied Sciences Degree. She did not point to any document wherein The Art Institute promised her an Associate's Degree as opposed to an Associate's of Applied Sciences Degree. In fact, the documentary evidence implies the opposite.

We do not believe this amounts to any evidence that The Art Institute entered into a contract to provide Villarreal with an Associate's Degree. We hold that all this evidence, taken as a whole, does not create a fact question regarding whether a valid contracted existed containing this term. At best, it shows that Villarreal was mistaken in her assumptions when enrolling in the school, and that The Art Institute did not take steps to ensure that she did not make that mistake. We find the trial court was correct in directing verdict on the breach of contract claim insofar as it relates to the breach of a promise to provide Villarreal with an Associate's degree.

### 3. Promise to Provide her with Transferrable Credits

■ Finally, we believe the same principles apply to Villarreal's claim that The Art Institute contracted to provide her with college hours that would be transferrable to another college or university. This alleged promise is in direct contradiction with the language on the Texas Education Agency form referred to previously. Her only testimony that could be construed to evidence of a contract to provide her with transferrable credits was that she was told by an admissions representative that she would be going to college at the institute, but it would only take two years for a degree rather than four years. We hold this evidence is insufficient to raise a fact issue regarding whether The Art Institute entered into a valid contract to provide her with transferrable college credits. We affirm the trial court's grant of directed verdict on all breach of contract claims.

### LEGAL AND FACTUAL SUFFICIENCY: FRAUD CLAIMS

■ Villarreal also complains that the trial court erred in entering a take-nothing judgment based on the jury's verdict because the evidence was legally and factually insufficient to support the jury's answer to issue number one. Issue number one read:

Did the Art Institute of Houston commit fraud against Daniza S. Villarreal?

You are instructed that fraud occurs when:

(a) a party makes a material misrepresentation,

(b) The misrepresentation is made with knowledge of its falsity or made recklessly without any knowledge of the truth and as a positive assertion,

(c) The misrepresentation is made with the intention that it should be acted on by the other party, and

(d) The other party acts in reliance on the misrepresentation and thereby suffers injury.

You are instructed that "misrepresentation" means:

a false statement of fact, or

a promise of future performance made with an intent not to perform as promised, or

a statement of opinion based on a false statement of fact, or

a statement of opinion that the maker knows to be false

The jury answered, "No." We do not find their answer to be unsupported by the evidence.

■ In considering a "no evidence," "insufficient evidence" or "against the great weight and preponderance of the evidence" point of error, we follow the well-established test set forth in *Pool v. Ford Motor Co.*, 715 S.W.2d 629, 635 (Tex. 1986); *see also* Calvert, *No Evidence and Insufficient Evidence Points of Error*, 38 TEX. L. REV. 361 (1960). In determining a "no evidence" point, we consider only the evidence and inferences which tend to support the finding and disregard all evidence and inferences to the contrary. *Larson v. Cook Consultants, Inc.*, 690 S.W.2d 567, 568 (Tex.1985); *International Armament Corp. v. King*, 686 S.W.2d 595, 597 (Tex. 1985); *In re King's Estate*, 150 Tex. 662, 244 S.W.2d 660, 661–62 (1951). If any evidence of probative force exists to support the finding, we must overrule the point and uphold the finding. *In re King's Estate*, 244 S.W.2d at 661–62.

■ In reviewing a factual sufficiency point, we must weigh all of the evidence in the record. *Ortiz v. Jones*, 917 S.W.2d 770, 772 (Tex.1996); *Burnett v. Motyka*, 610 S.W.2d 735, 736 (Tex.1980). A court may overturn findings only if they are so against the great weight and preponderance of the evidence that they are clearly wrong and unjust. *Ortiz*, 917 S.W.2d at 772; *Cain v. Bain*, 709 S.W.2d 175, 176 (Tex.1986). In *Pool v. Ford Motor Co.*, 715 S.W.2d 629 (Tex.1986), the court said that a court of appeals must also "clearly state why the jury's finding is factually insufficient or is so against the great weight and preponderance as to be manifestly unjust." *Pool*, 715 S.W.2d at 635.

After careful review of the record, we find the evidence supports the jury's findings. Plaintiff's fraud case focused on the exact same conduct complained of in the breach of contract action. The only evidence that Villarreal presented supporting her fraud claims was her own, clearly interested, testimony. Even at that, she arguably did not provide any evidence that The Art Institute authorized any misstatements, or that the statements were made intentionally and with the intent that she rely on them. The Art Institute offered the testimony of its president, an admissions director, and a professor. All appeared to be credible, and all denied Villarreal's charges. The jury was free to believe The Art Institute's testimony and disbelieve Villarreal's. We do not find that its answer to issue one was against the great weight and preponderance of the evidence, and certainly find that it was supported by legally sufficient evidence. Accordingly, we affirm the judgment of the trial court insofar as it relates to the fraud claims.

We affirm the judgment of the trial court in all respects.