Allan **SHERMAN**, Appellant,

v.

**MERIT OFFICE PORTFOLIO, LTD.**, Appellee.

No. 05–02–00133–CV.

Court of Appeals of Texas, Dallas.

Feb. 10, 2003.

Rehearing Overruled June 19, 2003.

---

Timothy E. Kelley, Thad D. Spalding, Dallas, for appellant.

Donald A. Muncy, Law Office of Jeffery M. Lust, Dallas, for appellee.

Before Chief Justices THOMAS, CORNELIUS,[1] and BOYD.[2]

## OPINION

Opinion By Chief Justice JOHN T. BOYD (Retired).

In this appeal, appellant Allan Sherman, M.D. challenges a judgment entered in favor of appellee Merit Office Portfolio, Ltd. (Merit Office). In doing so, he presents one issue in which he posits the trial court reversibly erred in granting Merit Office's motion for directed verdict, which asserted that Dr. Sherman failed to prove that Merit Office was the owner, occupier, or entity having control of the premises on which the incident occurred that gave rise to his personal injury suit. Disagreeing with that premise, we affirm the judgment of the trial court.

A brief recitation of the facts underlying Dr. Sherman's suit is necessary to our discussion of this appeal. In June 1993, Dr. Sherman leased office space from Kelley, Lundeen & Crawford Management Company, Inc. In October 1997, the company that then owned the building, at trial referred to as "Merit," and Merit's building manager, Barbara Zeier (Zeier), hired Bruce Washington, a roofing consultant, to assist Merit and Zeier in finding a roofing company to replace the roof on the building and oversee the job. Merit hired Affiliated Roofing to remove and replace the old roof.

As the roofers removed roofing material, they threw it onto a chute, which transported the materials into an open trash receptacle located outside Dr. Sherman's office. The resulting dust, smoke, and fumes wafted into Dr. Sherman's office and caused him persistent respiratory problems and recurring headaches. On the second day of the six-week project, Dr. Sherman placed the first of several calls to Zeier and informed her of his medical problems arising from the roofing project. During each call, Zeier informed the doctor that she would not make any changes

---

1. The Honorable William J. Cornelius, Chief Justice, retired, Sixth District Court of Appeals, Texarkana, Texas, sitting by assignment.

2. The Honorable John T. Boyd, Chief Justice, retired, Seventh District Court of Appeals, Amarillo, Texas, sitting by assignment.

because they could not stop the project inasmuch as the roof had to be replaced. Two to three weeks into the project, the roofers placed a gas-operated tar kettle outside of Dr. Sherman's office. Dr. Sherman asked the roofers' foreman if the workers could move the materials, but the foreman informed him that they could not do so without Zeier's permission. Dr. Sherman's physician also called Zeier and asked her to have the tar kettle moved because it was causing Dr. Sherman's medical problems. However, she refused to do so.

Timothy Kelley, Dr. Sherman's attorney, wrote Zeier at "Merit Texas Properties" with a similar request, but the roofing procedures continued. Zeier would later testify that Washington recommended the roofing materials be handled on Dr. Sherman's corner of the building because of prevailing winds, and it was he, rather than Zeier, who made the decision not to change the roofing procedures that gave rise to Dr. Sherman's complaints. Conversely, however, Washington would later testify it was Zeier who caused the kettle to be moved in front of Dr. Sherman's office to avoid another tenant's parking problems.

Dr. Sherman filed the underlying suit against Merit Office,[3] alleging negligence and breach of contract claims. In his live pleading, Dr. Sherman alleged that Merit Texas Properties (Merit Texas) owned the building and. Merit Office hired Affiliated Roofing, the company whose actions caused him personal and professional harm. Merit Texas was not a named defendant. Merit Office responded with a general denial.

Later, Merit Office filed a motion for summary judgment in which it stated "[p]laintiff was a tenant at a building owned and managed by [Merit Office] during all relevant times." Dr. Sherman filed a response, but the record does not show the trial court entered an order on the matter.

Later, the case proceeded to trial, and Merit Office moved for a directed verdict. In doing so, it argued that Dr. Sherman's lease was not with it and that the letter from Dr. Sherman's attorney to Zeier showed that Zeier was employed by Merit Texas rather than Merit Office. Merit Office also argued that because the trial evidence only indicated that Zeier worked for "Merit," there was no evidence that Merit Office had any involvement in the case. Despite Dr. Sherman's response that Merit Office filed no sworn pleading contesting identity and that Zeier had testified that she worked for "Merit," the trial court granted Merit Office's motion for directed verdict. It did so on the basis that there was no evidence that Merit Office was the owner, occupier, or entity having control of the premises on which the incident occurred. Dr. Sherman filed a motion for new trial and attached exhibits not admitted at trial. The motion sought to prove Merit Office's corporate identity as well as its status as a limited partner of Merit Texas. The motion was overruled by operation of law. Hence, this appeal followed.

### Directed Verdict

In presenting his issue, Dr. Sherman questions whether the granting of the di-

---

**3.** Originally, Dr. Sherman also filed suit against P.A.C. (Property Assessment Consultants, Inc., at which Washington was the chief executive officer) and Affiliated Roofing, Inc. The trial court subsequently rendered summary judgment for P.A.C. and severed it from the original suit. Thereafter, Dr. Sherman filed an amended pleading that did not include Affiliated Roofing as a defendant. Thus, these two defendants are not parties to this appeal.

rected verdict was proper in view of (1) evidence presented at trial that raised a fact question as to Merit Office's status as Dr. Sherman's landlord, (2) Merit Office's judicial admission in its motion for summary judgment that it was the owner and manager of the building, and (3) Merit Office's waiver of any defense that it was the wrong party when it failed to file a verified denial.[4]

 A directed verdict is proper when the evidence offered on a cause of action is insufficient to raise a fact issue. *See Encina P'ship v. Corenergy, L.L.C.,* 50 S.W.3d 66, 68 (Tex.App.-Corpus Christi 2001, pet. denied). In conducting our appellate review, we must examine the evidence in the light most favorable to the party against whom the verdict was rendered, disregard all contrary evidence and inferences, and give the nonmovant the benefit of all inferences arising from the evidence. *See Palmer v. Espey Huston & Assocs., Inc.,* 84 S.W.3d 345, 353 (Tex. App.-Corpus Christi 2002, no pet. h); *Villarreal v. Art Inst. of Houston, Inc.,* 20 S.W.3d 792, 796 (Tex.App.-Corpus Christi 2000, no pet.). A directed verdict is proper when reasonable minds can draw only one conclusion from the evidence. *Villarreal,* 20 S.W.3d at 795. When no evidence of probative force on an ultimate fact element exists, or when the probative force of slight testimony is so weak that only a mere surmise or suspicion is raised as to the existence of essential facts, the trial court has the duty to instruct the verdict. *See id.* at 796. However, if we find any evidence of probative value that raises a material fact issue, a directed verdict is improper, and the judgment must be reversed and remanded for a jury determi-

nation on that issue. *Espey Huston,* 84 S.W.3d at 353.

 First, Dr. Sherman argues that the trial evidence raised a fact issue as to Merit Office's status as Dr. Sherman's landlord. We disagree. Even when examining all such evidence in the light most favorable to Dr. Sherman, the probative force of the evidence presented was so weak that, at best, it raised only a mere surmise or suspicion as to the existence of the essential fact that Merit Office was Dr. Sherman's landlord. Both Zeier's and Washington's testimony mentioned only "Merit," not "Merit Office" or "Merit Office Portfolio, Ltd." Exhibits admitted at trial suggested the building owner was either Kelley, Lundeen & Crawford Management Company, Inc. or "Merit Texas Properties." With no mention of "Merit Office Portfolio, Ltd." and no evidence at trial to link Merit Office with Merit Texas, reasonable minds could conclude that Merit Office was not the owner, occupier, or entity having control of the premises. Even viewed most favorably to Dr. Sherman's proposition, the evidence would indicate that Merit Office was not Dr. Sherman's landlord.

 We next consider Dr. Sherman's argument that, by statements made in its own motion for summary judgment, Merit Office judicially admitted its landlord status. Responding to that argument, Merit Office contends that the language used in its motion for summary judgment did not indicate the knowing and formal intent to waive proof of facts that is necessary, such as to constitute a stipulation or affidavit. Indeed, Merit Office labels its language as "a non-essential statement due to inartful drafting."[5]

---

4. Dr. Sherman does not argue the trial court erred in not granting his motion for new trial

to which he attached exhibits linking ownership between Merit Texas and Merit Office.

5. Neither party has cited any authority that

A judicial admission is a formal waiver of proof that dispenses with the production of evidence on an issue and bars the admitting party from disputing it. *Lee v. Lee*, 43 S.W.3d 636, 641 (Tex.App.-Fort Worth 2001, no pet.). As long as the statement stands unretracted, it must be taken as true by the court and jury; it is binding on the declarant, and the declarant cannot introduce evidence to contradict it. *Id.* Elements required for a judicial admission are: (1) a statement made during the course of a judicial proceeding; (2) that is contrary to an essential fact or defense asserted by the person making the admission; (3) that is deliberate, clear, and unequivocal; (4) that, if given conclusive effect, would be consistent with public policy; and (5) that is not destructive of the opposing party's theory of recovery. *Lee*, 43 S.W.3d at 641–42; *United States Fid. & Guar. Co. v. Carr*, 242 S.W.2d 224, 229 (Tex.Civ.App.-San Antonio 1951, writ ref'd). It is the nature of an admission that by intention it be an act of waiver, and not merely a statement of assertion or concession, made for some independent purpose. *United States Fid.*, 242 S.W.2d at 228. The *United States Fidelity* court expressed that rule as, "Mere testimony, though it come from a party, is not by intention an act of waiver. A witness is not selling something or giving something away, but simply reporting something. The testimony of parties to a suit must be regarded as evidence, not as facts admitted." *Id.* (citation omitted).

Merit Office's motion for summary judgment expressly stated:

[Dr. Sherman] was a tenant at a building owned and managed by [Merit Office] during all relevant times. In October of 1997, [Merit Office] determined that the roof on the building in which [Dr. Sherman] was a tenant was in need of replacement. [Merit Office] hired a roofing consultant to make certain determinations regarding the type roof, the scope of work necessary and the materials necessary to perform the roof placement. [Merit Office] contracted with co-defendant, Affiliated Roofing, Inc., to perform the roof replacement. The roofing consultant oversaw the replacement of the roof.

A statement made in a motion for summary judgment can serve as a judicial admission. *See Stallard v. United States*, 12 F.3d 489, 495–96 (5th Cir.1994) (government was bound by judicial admissions it made in memorandum supporting its request for summary judgment and opposing taxpayer's motion). Assuming, arguendo, that Merit Office's statement of ownership constituted such a judicial admission, Dr. Sherman nevertheless waived his right to rely on it. In responding to the motion for directed verdict, Dr. Sherman did not raise the question whether Merit Office had made a judicial admission; rather, he asserted that Merit Office failed to file a verified pleading contesting corporate identity and that the trial evidence proved negligence. While a judicial admission relieves the opposing party's burden of proving the admitted fact and bars the admitting party from disputing it, a judicial admission does not excuse the opposing party from having to preserve error. *See Francis v. Dow Chem. Co.*, 46 S.W.3d 264, 277 (Tex.App.-Houston [1st Dist.] 2000), *rev'd on other grounds*, 46 S.W.3d 237 (Tex.2001). By not expressly

stands for the proposition that an allegation in a motion for summary judgment either can or cannot be construed as a judicial admission. *But cf. Gevinson v. Manhattan Const. Co. of Okla.*, 449 S.W.2d 458, 466 (Tex.1969) (judicial admissions can be found in pleadings or stipulations); *Lee v. Lee*, 43 S.W.3d 636, 641–42 (Tex.App.-Fort Worth 2001, no pet.) (counsel's statements on behalf of client may serve as judicial admissions).

raising his judicial admission objection in his response to the motion for directed verdict, Dr. Sherman waived his right to rely on this judicial admission argument on appeal. *See* TEX.R.APP. P. 33.1(a)(1)(A); *Houston First Am. Sav. v. Musick,* 650 S.W.2d 764, 768–69 (Tex.1983) (holding that appellant waived its right to rely on judicial admission when appellant's objection did not indicate it was relying on appellee's pleadings as judicial admission). For these reasons, we resolve this argument against Dr. Sherman.

 Finally, we consider Dr. Sherman's argument that Merit Office waived any defense that it was the wrong party sued because it failed to file a verified denial pursuant to Texas Rule of Civil Procedure 93(2), (4). Section 2 provides that unless the truth of the matter appears of record, a pleading setting up the matter that a defendant is not liable in the capacity in which he is sued must be verified by affidavit, and section 4 provides that unless the truth of the matter appears of record, a pleading asserting there is a defect of parties must be verified by affidavit. *See* TEX.R. CIV. PROC. 93(2), (4).

However, Merit Office could not have waived a defense it did not assert. Merit Office did not argue in its motion for directed verdict that it was not liable in the capacity in which it was sued or that there was a defect in the parties. Instead, it merely argued Dr. Sherman failed to prove a cause of action against Merit Office. In his original petition, Dr. Sherman stated that Merit *Texas* owned the building and that Merit *Texas* hired Affiliated Roofing. In his amended petition, he stated that Merit *Texas* owned the building and Merit *Office* hired Affiliated Roofing. In neither petition did Dr. Sherman name Merit Texas as a defendant, although it is apparent Dr. Sherman knew of the existence of both parties. We resolve this argument against Dr. Sherman.

In summary, we overrule Dr. Sherman's issue and affirm the judgment of the trial court.