ACCEPTED
12-13-00393-CV
TWELFTH COURT OF APPEALS
TYLER, TEXAS
2/5/2015 8:59:07 PM
CATHY LUSK
CLERK

12-13-00393-CV

_____

COURT OF APPEALS
TWELFTH JUDICIAL DISTRICT OF TEXAS
TYLER, TEXAS

FILED IN
12th COURT OF APPEALS
TYLER, TEXAS
2/5/2015 8:59:07 PM
CATHY S. LUSK
Clerk

_____

VALERUS COMPRESSION SERVICES, A TEXAS LIMITED PARTNERSHIP,
VALERUS COMPRESSION SERVICES MANAGEMENT, LLC, A TEXAS LIMITED
LIABILITY COMPANY, GENERAL PARTNER
*Appellant/Cross-Appellee*,

v.

GREGG COUNTY APPRAISAL DISTRICT,
*Appellee/Cross-Appellant*.

_____

**MOTION FOR REHEARING**
_____

On Appeal from the 188th District Court
of Gregg County, Texas
Honorable David Brabham, Presiding

_____

Gwen J. Samora
Texas Bar No. 00784899
Patrick W. Mizell
Texas Bar No.  14233980
Glen Rosenbaum
Texas Bar No.  17266800
Russell T. Gips
Texas Bar No.  24069788
Conor P. McEvily
Texas Bar No.  24078970
VINSON & ELKINS L.L.P.
1001 Fannin Street, Suite 2500
Houston, Texas 77002-6760
Telephone: (713) 758-2942
Facsimile: (713) 758-5214
Email: gsamora@velaw.com

*Attorneys for Appellant/Cross-Appellee Valerus Compression Services, LP, a
Texas Limited Partnership, Valerus Compression Services Management,
LLC, a Texas Limited Liability Company, General Partner*

February 5, 2015

# TABLE OF CONTENTS

ISSUES PRESENTED FOR REVIEW ................................................................... iii

INTRODUCTION .................................................................................................1

ARGUMENT .........................................................................................................3

**I.**    Regarding Valerus's Leased Heavy Equipment, the Record Evidence Sufficiently Shows that This Equipment Was "Self-Powered" under Tax Code § 23.1241(a)(6). ..........................................................................3

    **A.**    The Stults and Rutledge Affidavits indicate that Valerus's equipment is "self-powered." ...............................................................4

    **B.**    Record evidence reflects that Valerus's compressor packages and cooler units are "engine driven." ......................................................6

    **C.**    The horsepower ratings indicate that the compressor packages are self-powered. ...........................................................................7

**II.**    Regarding Valerus's Unleased Heavy Equipment, the Record Evidence Sufficiently Shows that This Equipment Was "Held for Lease" under Texas Tax Code § 23.1241(a)(2). ..............................................8

    **A.**    GCAD's admission that all of Valerus's heavy equipment was "held for lease," obviated the need for any evidence on this point. ......................................................................................9

    **B.**    Record evidence shows that both leased and unleased equipment was "held for lease" by Valerus. ......................................10

PRAYER ............................................................................................................13

CERTIFICATE OF COMPLIANCE ..................................................................15

CERTIFICATE OF SERVICE ...........................................................................16

i

## INDEX OF AUTHORITIES

**Cases**

*Dutton v. Dutton*,
18 S.W.3d 849 (Tex.App.—Eastland 2000, pet. denied) ....................................10

*Gregg Appraisal District v. Capacity of Texas, Inc.*,
No. 12-11-00045-CV, 2012 WL 727293 (Tex.App.—Tyler 2012,
no pet.)..............................................................................................................12

*Hennigan v. I.P. Petroleum Co., Inc.*,
858 S.W.2d 371 (Tex. 1993) ............................................................................10

*Holy Cross Church of God in Christ v. Wolf*,
44 S.W.3d 562 (Tex. 2001) ..............................................................................10

*Mapco, Inc. v. Carter*,
817 S.W.2d 686 (Tex. 1991) ..............................................................................9

*Sherman v. Merit Office Portfolio, Ltd.*,
106 S.W.3d 135 (Tex.App.—Dallas 2003, pet. denied) ....................................10

**Statutes**

Tex. Tax Code § 23.1241.............................................................. 1, 2, 3, 12

Tex. Tax Code § 23.1241(a)(2)........................................................... passim

Tex. Tax Code § 23.1241(a)(6)............................................................ 2, 3, 14

Tex. Tax Code § 23.1241(b) ................................................................ 3, 8, 9

Tex. Tax Code § 23.1242..................................................................1, 2

**Rules**

Tex. R. App. P. 49.9..............................................................................1

Tex. R. Civ. P. 166a(c) .........................................................................3

**Other Authorities**

Black's Law Dictionary 790 (6th ed. 1990) ...........................................12

Merriam-Webster's Collegiate Dictionary 600 (11th ed. 2003)...............7

## ISSUES PRESENTED FOR REVIEW

1. Whether, with respect to Valerus's heavy equipment that was under lease, the record sufficiently shows that such equipment was "self-powered" under Texas Tax Code § 23.1241(a)(6).

2. Whether, with respect to Valerus's heavy equipment that was *not* under lease, the record sufficiently shows that such equipment was "h[eld] for … lease" under Texas Tax Code § 23.1241(a)(2).

## INTRODUCTION

This appeal concerns the constitutionality and applicability of two recently modified tax provisions: § 23.1241 and § 23.1242 of the Texas Tax Code, governing the valuation of "dealer's heavy equipment inventory." After Valerus filed suit against Gregg County Appraisal District ("GCAD"), seeking to have its compressor packages and cooler units valued according to §§ 23.1241 and 23.1242's income-based scheme, the trial court held on summary judgment that the two tax laws, while "applicable to [Valerus's heavy equipment] at issue," were nonetheless "unconstitutional as applied."[1] CR.279.[2]

Valerus appealed the trial court's summary judgment. And on January 7, 2015, after full briefing and oral argument, this Court declined to address the constitutionality issue, holding instead that "Valerus did not … bring forward sufficient facts in evidence to meet its burden to prove that" §§ 23.1241 and

---

[1] Valerus's suit also sought to establish tax situs for its cooler units and compressor packages in Harris County—the location of Valerus's principal place of business. The trial court denied, and this Court affirmed, Valerus's situs argument, holding that Valerus's heavy equipment was properly sitused in Gregg County. CR.280; Op. at 4-8. Nothing in this Motion for Rehearing should be construed to abandon, waive or otherwise disclaim Valerus's situs argument—or any other argument pressed on appeal—all of which have been properly preserved. *See* TEX. R. APP. P. 49.9 ("A motion for rehearing is not … required to preserve error.").

[2] The Clerk's Record will be cited as "CR.[page]." The Supplemental Clerk's Record will be cited as "Supp.CR.[page]." And the Court of Appeals' Opinion will be cited as "Op. at [page]."

23.1242 applied to its heavy equipment. Op. at 11. Specifically, the Court bifurcated Valerus's heavy equipment into two groups: (1) Valerus's cooler units and compressor packages that were *under lease* during the year in question (2012); and (2) Valerus's cooler units and compressor packages that were *not under lease* during the year in question.[3] Regarding the <u>first</u> group, the Court held that "Valerus provided no evidence explaining how its equipment functions" making it "impossible to know if the equipment is 'self-powered'" as required by Texas Tax Code § 23.1241(a)(6). *Id*. at 12. Regarding the <u>second</u> group, the Court held that "from our view of the record, we found no evidence that these specific units were held by Valerus for lease during 2012," as required by Texas Tax Code § 23.1241(a)(2). *Id*. at 10. Accordingly, because the Court believed that "Valerus did not fulfill its burden to prove that its equipment meets [the] definition of 'heavy equipment,' [it] reverse[d] that portion of the trial court's judgment" and remanded for further proceedings. *Id*. at 13.

Through this Motion for Rehearing, without waiving any other argument pressed on appeal, Valerus respectfully asks this Court to reconsider its holding in two important respects: (1) whether, with respect to Valerus's heavy equipment

---

[3] Of the 28 compressor packages and 32 cooler units at issue, the record reflects that 22 of the compressors and 31 of the coolers were not rented during 2012, either because they were being refurbished or were simply awaiting redeployment. *See* Op.10; *see also* Supp.Cr.26-27; CR.83; CR.211.

2

that was under lease, the record sufficiently shows that this equipment was "self-powered" under Texas Tax Code § 23.1241(a)(6); and (2) whether, with respect to Valerus's heavy equipment that was *not* under lease, the record sufficiently shows that this equipment was "h[eld] for … lease" under Texas Tax Code § 23.1241(a)(2). Valerus submits that both questions should be answered in the affirmative.

## ARGUMENT

### I. Regarding Valerus's Leased Heavy Equipment, the Record Evidence Sufficiently Shows that This Equipment Was "Self-Powered" under Tax Code § 23.1241(a)(6).

As the Court accurately observed in its Opinion, § 23.1241(b)'s inventory-based appraisal scheme applies only to "dealer's heavy equipment inventory"—a term defined in § 23.1241(a)(6) as "self-propelled, *self-powered*, or pull-type equipment, including farm equipment or a diesel engine that weighs at least 1,500 pounds and is intended to be used for agricultural, construction, industrial, maritime, mining, or forestry uses." TEX. TAX CODE § 23.1241 (emphasis added). As the summary-judgment movant on the issue of whether its compressor packages and cooler units constituted "dealer's heavy equipment" by being "self-powered," Valerus bore the burden of adducing evidence that its equipment met this definition as a matter of law. *See* TEX. R. CIV. P. 166a(c). Though the trial court agreed that Valerus met this burden, *see* CR.279, this Court held otherwise:

3

"Valerus provided no evidence explaining how its equipment functions[;] [i]t is impossible to know if the equipment is 'self-powered' in the absence of such an explanation." Op. at 12.

In concluding that Valerus "provided no evidence explaining how its equipment functions," this Court addressed, and subsequently dismissed, three of Valerus's arguments and the record evidence supporting them: (1) Allen Stults's affidavit asserting that Valerus's equipment is self-powered—which this Court found "conclusory"; (2) evidence that each compressor "has a certain amount of horsepower"—which the Court deemed "not evidence that the equipment is self-powered"; and (3) Valerus's assertion that its compressor packages and cooler units were powered by internal combustion engines—which this Court found unsupported by any evidence. Op. at 11-12. However, as explained below, the record contains ample additional evidence that Valerus's compressors and coolers are "self-powered" and thus meet the definition of "dealer's heavy equipment."

### A. The Stults and Rutledge Affidavits indicate that Valerus's equipment is "self-powered."

Despite being labeled "conclusory" by the Court, Op. at 11, the affidavit of Allen Stults contains more than the mere assertion that "the compressor packages and coolers … are self-powered." CR.55. For example, Stults testified that all of Valerus's coolers and compressors, "when in operation, *are powered solely by the natural gas that they pressurize and process*." *Id*. (emphasis added). Stults also

4

stated the units "do not depend on any electrical power *or any external source*." *Id.* (emphasis added). And Stults further averred that "[t]he natural gas supplied by the compressor packages allow[s] [them] to perform *all necessary functions ….*" *Id.* (emphasis added). In other words, Stults's uncontroverted testimony establishes: (1) that equipment's power is derived from "no external source"; and (2) that this power drives "all necessary functions." Under even the most demanding conception of "self-powered," a machine satisfying Stults's description would doubtless fall within the term's definition.

The affidavit of John Rutledge further corroborates Stults' testimony, and is likewise evidence that Valerus's equipment is self-powered. The Rutledge Affidavit states that "the *subject property*, and others like it, *runs* by *natural gas being lifted from the ground.*" CR.213 (emphasis added). In other words, Rutledge affirmed that Valerus's compressor packages and cooler units ("the subject property") is powered ("runs") by a non-external fuel source ("natural gas being lifted from the ground"). This testimony is further evidence that Valerus's compressor packages and cooler units are "self-powered."

**B.** **Record evidence reflects that Valerus's compressor packages and cooler units are "engine driven."**

Contrary to the Court's declaration that "Valerus provided *no* evidence explaining how its equipment functions,"[4] Op. at 12 (emphasis added), the record is replete with evidence specifically indicating how Valerus's cooler units and compressor packages are powered: *by engines*.[5] For example, a spreadsheet in the record listing information about all of Valerus's cooler units, notes that each one is "*engine driven*" and simultaneously lists corresponding "engine makes" and "engine models." Supp.Cr.20 (emphasis added). The record holds similar information about Valerus's compressor packages, for which "engine data" (make, model, horsepower, etc.) is reflected in two separate spreadsheets. *See* Supp.Cr.22, 24. Furthermore, Allen Stults' deposition transcript reflects his testimony that certain compressors are powered by "Waukesha engines," Supp.Cr.33, and that others are powered by "Caterpillar Engines." Supp.Cr.35, 36, 53-55. And elsewhere in his deposition transcript, Stults notes that cooler units are "engine driven," Supp.Cr.57, that a cooler's muffler is bolted to the "top of the engine," Supp.Cr.101, and that a cooler unit is an "engine cooling system." Supp.Cr.101.

---

[4] The Court's emphasis on the equipment's *functioning* ("how [Valerus's] equipment functions") seems to lose sight of the pertinent inquiry, which is how the equipment is *powered*. Op. at 12.

[5] It bears noting that GCAD has never argued—either at trial or on appeal—that Valerus's compressor packages and cooler units are not powered by engines.

6

Finally, one of sample leases contained in the record notes the types of "Engine Drivers" and "Engine BHP" that correspond with a particular compressor, Supp.CR.135-36; and still another sample lease indicates that the lessee of the compressor shall "furnish free use of suitable, sweet, dry natural gas fuel *for engine use*." Supp.Cr.145, 216 (emphasis added).

In short, the record contains sufficient evidence indicating that both the compressor packages and cooler units are "engine driven." Supp.Cr.20. This fact, coupled with undisputed fact that Valerus's equipment is fueled by gas extracted from the ground, is sufficient to prove, as a matter of law, that Valerus's compressor packages and cooler units are "self-powered."

### C. The horsepower ratings indicate that the compressor packages are self-powered.

Finally, the Court's Opinion notes that it was unpersuade by "evidence show[ing] that each [of Valerus's] compressor[s] has a certain amount of horsepower." Op. at 12; *see also* CR.13-14 (noting the horsepower figures for each compressor unit at issue). "Horsepower is a unit of power," the Court held; "[and] an indication of the equipment's horsepower is not evidence that the equipment is self-powered." Op. at 12 (citing MERRIAM-WEBSTER'S COLLEGIATE DICTIONARY 600 (11th ed. 2003)).

"Horsepower," however, is more than a "unit of power." It is "a unit used to measure *the power of engines*." MERRIAM-WEBSTER'S COLLEGIATE DICTIONARY

7

(11th ed. 2003) *available at* http://www.merriam-webster.com/dictionary/ horsepower (emphasis added). Thus, given (a) the ample evidence that the compressor packages are operated by "engines," and (b) the ample evidence that such engines are powered non-externally, CR.55, "by gas being lifted from the ground," CR.213, Valerus's evidence of the compressors' horsepower is indeed an indication that they are "self-powered."

As an additional matter, the Court noted that, because "there is no indication of 'horsepower' for *coolers*," an "infer[ence] that the compressors have engines" would require an "infer[ence] that the coolers do not [have engines]." Op. at 12 (emphasis added). But of course, the record contains ample evidence that the coolers are "engine driven." *See supra* Part I.B.  Further, simply because the record lacks evidence of the coolers' horsepower does not mean the coolers lack engines.

## II.	Regarding Valerus's Unleased Heavy Equipment, the Record Evidence Sufficiently Shows that This Equipment Was "Held for Lease" under Texas Tax Code § 23.1241(a)(2).

As for the Court's holding that, "[there is] no evidence that [Valerus's unleased compressors and coolers] were held … for lease" under § 23.1241(a)(2)—Valerus respectfully submits that the record shows otherwise. The Court was correct to observe that, to fall within § 23.1241(b)'s income-based valuation scheme, Valerus's equipment must meet the definition of "[d]ealer's heavy equipment inventory"—which includes "all items of heavy equipment that a

8

dealer *holds for ... lease*, or rent in this state during a 12-month period." TEX. TAX CODE § 23.1241(a)(2) (emphasis added); *see also id*. § 23.1241(b) (noting that the statute's income-based appraisal scheme determines the "market value" for "dealer's heavy equipment inventory"). However, contrary to the Court's "no evidence" holding, there is abundant evidence that Valerus's unleased compressors and coolers were "held for lease" under § 23.1241(a)(2). This evidence falls in two categories: (A) GCAD's own admission that all the equipment at issue was "held for lease"; and (B) affidavits indicating that both the leased and unleased equipment was "held for lease" by Valerus.

### A. GCAD's admission that all of Valerus's heavy equipment was "held for lease," obviated the need for any evidence on this point.

Perhaps because Valerus's satisfaction of § 23.1241(a)(2) was not previously in doubt, GCAD itself conceded that Valerus's unleased equipment was *equipment that was being held for lease*—a description that is conclusive against GCAD as a judicial admission. In its October 3, 2013 Amended Motion for Summary Judgment, GCAD admitted that "[t]he *subject properties* [*i.e.*, Valerus's compressor packages and cooler units] *are owned for the purpose of **renting or leasing** to natural gas gatherers.*" CR.125 (bold in original; itallics added) (citing the Rutledge Affidavit, available at Supp.CR.13-17). This factual concession is a judicial admission, meeting the Supreme Court's requirements of being "deliberate, clear and unequivocal" so as to "be *conclusive against a party.*"

9

*Mapco, Inc. v. Carter*, 817 S.W.2d 686, 687 (Tex. 1991) (emphasis added). "[A] judicial admission … is a *formal waiver of proof* … [that] is conclusive upon the party making it, … relieves the opposing party's burden of proving the admitted fact, and bars the admitting part[y] from disputing it …." *Hennigan v. I.P. Petroleum Co., Inc.*, 858 S.W.2d 371, 372 (Tex. 1993).[6] Thus, even if there was "no evidence" that Valerus's unleased equipment was "held for lease," (and, as shown *infra* Part II.B., there *was* such evidence) Valerus was nevertheless relieved of its evidentiary burden on this issue due to GCAD's admission. *See* Op. at 10.

In short, because GCAD admitted that all of Valerus's equipment was "owned for the purpose of renting or leasing"—*i.e.,* "h[eld] for … lease" under § 23.1241(a)(2)—Valerus was not required to affirmatively adduce evidence on this point.

### B. Record evidence shows that both leased and unleased equipment was "held for lease" by Valerus.

Even without GCAD's judicial admission—which should be controlling on this issue—uncontroverted record evidence shows what GCAD rightly conceded

---

[6] *See also Sherman v. Merit Office Portfolio, Ltd.*, 106 S.W.3d 135, 140 (Tex.App.—Dallas 2003, pet. denied) ("A statement made in a motion for summary judgment can serve as a judicial admission."); *Holy Cross Church of God in Christ v. Wolf*, 44 S.W.3d 562, 568 (Tex. 2001) (holding that a party made a judicial admission in its summary-judgment response and counter-motion for summary judgment); *Dutton v. Dutton*, 18 S.W.3d 849, 854 (Tex.App.—Eastland 2000, pet. denied) (judicial admission prevents a party from taking contrary position on appeal).

below: that all of Valerus's compressor packages (including those awaiting redeployment) and all of Valerus's cooler units (including those that were idle and not under lease) were being held for the sole purpose of being rented or leased as required by § 23.1241(a)(2).

At least two affidavits—the Stults Affidavit, submitted by Valerus, and the Rutledge Affidavit, submitted by GCAD—separately and independently indicate that all the heavy equipment at issue in this case was being held for lease or rent in Gregg County. In the Stults Affidavit, Allen Stults testified that "[m]aintenance [for the compressor packages and cooler units] is conducted at the Kilgore facility, and *idle units are* _stored there until they are leased to another customer_." CR.83 (emphasis added)); *see also*, *id.* (Stults Affidavit; noting that "Valerus is in the business of leasing compressor packages that are used to extract oil and gas," and further providing that the compressor packages that were not under a rental contract "remained in Valerus's facility in Kilgore, _undergoing refabrication or awaiting redeployment under a new lease_" (emphasis added)). In the Rutledge Affidavit, John Rutledge confirmed that "[t]he subject property was *either utilized* in Gregg County Texas *or located* at Valerus's yard in Kilgore, Gregg County, Texas as of January 1, 2012." CR.211 (emphasis added).

Furthermore, to the extent that there is any doubt about what "h[eld] for … lease" actually means, this Court's recent decision in *Gregg Appraisal District v.*

11

*Capacity of Texas, Inc.*, No. 12-11-00045-CV, 2012 WL 727293 (Tex.App.—Tyler 2012, no pet.) answers the question. There, the Court examined the meaning of "held for sale" in the pre-2011 version of § 23.1241—*i.e.*, before the definition of "[d]ealer's heavy equipment" was expanded to include items a dealer "holds for … *lease, or rent*." TEX. TAX CODE § 23.1241(a)(2) (emphasis added). And, in a unanimous opinion authored by Justice Griffith, the Court held that "based on our interpretation of the statute, *'for sale,' in this context, should be given a <u>broad</u> <u>meaning</u> to cover a product that is <u>available</u> to any purchaser who is willing to purchase the product*." 2012 WL 727293 at *4. (emphasis added). Looking to Black's Law Dictionary, the Court also determined that the ordinary meaning of "hold" under § 23.1241(a)(2), must "mean[] *'to possess in virtue of a lawful title*.'" *Id*. at *3 (citing Black's law Dictionary 790 (6th ed. 1990)) (emphasis added).

Though *Capacity* construed the pre-2011 version of § 23.1241, its holding nevertheless applies. As in *Capacity*, "holds" in § 23.1241(a)(2)'s "holds for … lease," should be understood to mean "possess in virtue of a lawful title." *Id*. at *3. And there is no question that Valerus possesses lawful title to the compressor packages and cooler units at issue. *See* CR.125 (GCAD's Amended Motion for Summary Judgment; "The property at issue <u>is owned by Plaintiff</u> [Valerus]." (emphasis added)). Furthermore, insofar as the phrase "for sale" "[was] given a broad meaning to cover a product that is *available to any purchaser* who is willing

12

to purchase the product," *id* at \*4 (emphasis added), so should the phrase "for lease" be given a similarly broad meaning to cover a product that is available to any lessor who is willing to lease the product. Though some of Valerus's compressor packages may have been undergoing refurbishment or repair during part of the tax year in question,[7] this does not mean that they were unavailable for lease. Indeed, the very purpose of their refurbishment or repair was undoubtedly so that the compressor packages *could more readily be leased*. Simply because a particular unit of heavy equipment is not *immediately* available for use by a lessee, does not make it *un*available for lease.

In sum, the uncontroverted record evidence in this case, combined with this Court's own, recent jurisprudence, conclusively shows that Valerus's leased and unleased cooler units and compressor packages were "held for lease" as required by § 23.1241(a)(2) of the Texas Tax Code. Valerus respectfully submits that the Court's "no evidence" holding should be revised in light of this record evidence.

## **PRAYER**

Appellant, Valerus Compression Services, LP, a Texas Limited Partnership, Valerus Compression Services Management, LLC, a Texas Limited Liability Company, General Partner, respectfully asks this Court reconsider and revise its

---

[7] The record does not reflect how many of Valerus's compressor packages and cooler units were unleased because they were simply "awaiting new deployment" and how many were unleased because they were "undergoing refabrication." CR.83.

January 7, 2015 Opinion, to hold that (1) with respect to Valerus's leased heavy equipment, the record shows that such equipment was "self-powered" under Texas Tax Code § 23.1241(a)(6); and (2) with respect to Valerus's unleased heavy equipment, the record shows that such equipment was "h[eld] for … lease" under Texas Tax Code § 23.1241(a)(2). Valerus also asks this Court to address the constitutional issues that it did not reach in its January 7, 2015 Opinion. And Valerus further requests any other such relief to which it may be justly entitled.

Respectfully submitted,

*/s/ Gwen J. Samora*
Gwen J. Samora
Texas Bar No. 00784899
Patrick W. Mizell
Texas Bar No.  14233980
Glen Rosenbaum
Texas Bar No.  17266800
Russell T. Gips
Texas Bar No.  24069788
Conor P. McEvily
Texas Bar No.  24078970
VINSON & ELKINS L.L.P.
1001 Fannin Street, Suite 2500
Houston, Texas 77002-6760
Telephone: (713) 758-2942
Facsimile: (713) 758-5214
Email: gsamora@velaw.com

***Attorneys for Appellant/Cross-Appellee Valerus Compression Services, LP, a Texas Limited Partnership, Valerus Compression Services Management, LLC, a Texas Limited Liability Company, General Partner***

14

## CERTIFICATE OF COMPLIANCE

Pursuant to Texas Rule of Appellate Procedure 9.4(i)(3), I hereby certify that this Motion for Rehearing contains 3,140 words, excluding the words not included in the word count pursuant to Texas Rule of Appellate Procedure 9.4(i)(1). This is a computer-generated document created in Microsoft Word, using 14-point typeface for all text, except for footnotes which are in 12-point typeface. In making this certificate of compliance, I am relying on the word count provided by the software used to prepare the document.

*/s/ Conor P. McEvily*
Conor P. McEvily

## CERTIFICATE OF SERVICE

I certify that on February 5, 2015, I electronically served a true and correct copy of the Brief of Appellant on the following counsel for Defendants/Appellees Gregg County Appraisal District:

Robert Mott
rmott@pbfcm.com
Christopher S. Jackson
cjackson@bpfcm.com
PERDUE, BRANDON, FIELDER, COLLINS & MOTT, L.L.P.
3301 Northland Dr., Ste. 505
Austin, Texas 78731
Telephone: (512) 302-0190
Facsimile: (512)  302-6963

/s/ Conor P. McEvily
Conor P. McEvily

16

US 3277249v.2